STATE v. VERN MARK SHERIAN AND WILLIAM PEDEN.

(Filed 7 June, 1951.)

**Criminal Law §§ 9, 53d—**

Where defendants admit that they aided a person who had committed a felonious assault in their presence to escape and avoid arrest and punishment, but contend that they acted under compulsion and through fear of death or great bodily harm at the hands of the felon, it is reversible error for the court to fail to charge the jury adequately upon this defense arising upon their testimony, G.S. 1-180, and a charge to the effect that such aid must have been willful and with a felonious intent to aid the felon to escape arrest and punishment without specific instructions on the question of compulsion, is insufficient.

APPEAL by defendants from *Sink, J.,* October Term, 1950, of RICH-MOND.

Criminal action tried upon a bill of indictment charging that the defendants willfully and feloniously, after a felonious assault with a

deadly weapon with intent to kill, inflicting serious injuries not resulting in death, had been made by one James Diggs upon one Rex Howell, with full knowledge that said felonious assault had been made, did render personal assistance and aid to the said James Diggs, aiding and assisting him to escape and avoid arrest and punishment.

The evidence tended to show that the defendants and a man named James Diggs, who was known to the defendants and who was wanted for murder in Norfolk, Virginia, drove from Norfolk to Hamlet, North Carolina, on the night of 30 May, 1949. Sherian was driving a 1949 Chevrolet car, Peden was in the front seat with him, and Diggs was in the back seat. As they approached the intersection of Highways 74 and 77, in the western part of Hamlet, about 5:30 a.m., on 31 May, 1949, Rex Howell, a member of the Hamlet Police Department, recognized Diggs, and followed the car. The car was driven eastward through Hamlet. When the car had gotten past the corporate limits, traveling toward Laurinburg, Howell signaled the driver of the car to stop and asked the defendants to identify themselves, and they did so. Diggs was then asked if he had any identification and he replied he did not. When asked what his name was he said it was "Smitty." The defendants told the officer all they ever heard him called was "Smitty." The officer then requested Diggs to get out of the car. He searched him finding a small address book, and as he looked in it Diggs shot him in the face with a pistol. Diggs got in the car and Sherian drove him away.

The evidence for the defendants tends to show that the defendant Peden went to visit the defendant Sherian at his home in South Norfolk on Sunday night, 30 May, 1949; that when he got ready to leave around ten o'clock, Sherian offered to take him home. His car was parked in front of his house. The defendants got in the car and after Sherian drove off, Diggs raised up in the back seat and said, "Drive me out of town." Sherian tried to reason with him, but he said "No time for talk, drive on." According to the defendants' evidence, Diggs was armed with a pistol and they carried him to Hamlet, where his father lived, because of fear of bodily harm.

When Diggs saw the officer following them in Hamlet, he said: "If he stops us, you know me only as "Smitty." And when they were stopped by the officer Diggs said, "Everybody sit tight."

After Diggs shot Howell, the defendants testified, Diggs got back in the car and gave the command to "drive on." Sherian drove his car down the highway for about a mile and a quarter, at which point Diggs directed him to stop. When Sherian stopped the car Diggs got out and said, "I'm going to take to the woods."

The defendants further testified that after Diggs left the car, Sherian turned the car around to go to the aid of the officer, but found the officer

had gone; that they then drove to Hamlet to report what had happened, and parked their car beside the Chevrolet place. They first decided the best thing to do was to report what had happened to the police. Then they got to thinking and decided the best thing to do was to return to Norfolk and report it to the police there. They caught a bus to Charlotte, then caught a ride to Greensboro, and went by bus from Greensboro to Portsmouth and on to Norfolk, where they immediately reported what had happened to the Norfolk Police Department. They were delivered to North Carolina officers at the State line that same day.

The evidence tends to show these defendants were never in trouble before this time and were men of good character.

From a verdict of guilty and the judgment entered upon the verdict, the defendants appeal and assign error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Walter F. Brinkley, Member of Staff, for the State.*
*John Kerr, Jr., and Jones & Jones for defendants.*

DENNY, J. The defendants based their defense solely upon their contention that whatever assistance they rendered to James Diggs, after he feloniously assaulted Rex Howell, was done under compulsion and through fear of death or great bodily harm at the hands of Diggs, and not with the intention or for the purpose of enabling him to escape arrest and punishment.

In the charge in chief, the court instructed the jury that "the crime charged against the defendants . . . consists of the following elements: 1. The felony charged must have been committed; 2. The accused must have known that the felony had been committed by the person received, relieved or assisted; 3. The alleged accessory or accessories must render assistance to the felon."

Later in the charge the court instructed the jury on the 3rd element of the crime of accessory after the fact, as follows: "The accessory, which the State contends applies to the cases of these defendants, and each of them, must render assistance to the felon named in the bill of indictment, meaning James Diggs, in this case. Did these defendants, or either of them, render assistance to the felon personally?"

The contentions of the defendants were adequately given and the general principles of law with respect to the crime charged were correctly stated as ordinarily applicable to the crime of accessory after the fact, where the question of the voluntariness or involuntariness of the assistance rendered to the felon is not raised. *S. v. Williams,* 229 N.C. 348, 49 S.E. 2d 617; *S. v. Potter,* 221 N.C. 153, 19 S.E. 2d 257. But the court did not expressly instruct the jury as to the law applicable to the

specific evidence offered by the defendants in support of their defense, in the event it should find the facts to be as testified to by them. G.S. 1-180; *S. v. Ardrey,* 232 N.C. 721, 62 S.E. 2d 53; *S. v. Herbin,* 232 N.C. 318, 59 S.E. 2d 635; *S. v. Sutton,* 230 N.C. 244, 52 S.E. 2d 921; *S. v. Fain,* 229 N.C. 644, 50 S.E. 2d 904. And it is apparent from the request made by the jury, for additional instruction, that it desired to be instructed on this precise question. The request being in the following language: "We request instruction on the last part. In other words, from the time the shooting took place, from that point under fear or otherwise."

In response to this request, the court proceeded to give the following instruction: "The defendants, or either of them, if found beyond a reasonable doubt to have been present at the time the alleged felony was committed, to wit, the assault upon Officer Howell, Rex Howell, received, relieved, comforted, or assisted the person committing such felony, who is alleged to be one James Diggs, or in any manner aided him to escape arrest or punishment, willfully and feloniously, it would be your duty upon such findings beyond a reasonable doubt, to return a verdict of guilty as to such defendant or defendants. The question of what motivated these defendants, or either of them, subsequent to that time is a question of fact for you to determine. The court calls your attention to the fact that as a matter of law, these defendants are not being tried here for any relationship, if any they had, with the alleged crime committed by Diggs in the State of Virginia. The testimony relating to their conduct and their relationship in the State of Virginia and to their relationship to Diggs was competent in this case, and is competent for you to consider as bearing upon the alleged intent of the defendants after the alleged assault upon the officer in Richmond County."

The court then proceeded to recapitulate the contentions of the State and of the defendants. And after giving the contentions of the defendants, which included those with respect to the trip from Virginia, the court then concluded its charge in the following language: "On the contrary, if you find beyond a reasonable doubt that these acts, or any of them, were done for the purpose of relieving, protecting or assisting negatively or positively, the alleged felon, Diggs, then it would be your duty to return for your verdict one of guilty as to such defendant or defendants as you find as to. The guilt or innocence of these and each of them in this case is a question that you gentlemen are sworn to determine from all the testimony and all the circumstances in the light of the law as given you by the court."

It must be kept in mind that the only question before the jury, that was in dispute, was whether the assistance given by these defendants to James Diggs, after he feloniously assaulted Rex Howell, was done under compulsion and through fear of death or great bodily harm at the hands of

James Diggs, as contended by them, or with the willful and felonious intent and purpose to aid him to escape arrest and punishment. This was not only a substantial feature of the case, it was the crux of it. The testimony of the defendants themselves established every other element of the crime of accessory after the fact.

The defendants were entitled to have the court instruct the jury to the effect that if, upon a consideration of all the evidence, it failed to find beyond a reasonable doubt, that the assistance rendered to James Diggs, after he committed the felonious assault upon officer Howell, was rendered with the willful and felonious intent to aid Diggs to escape arrest and punishment, and not under compulsion or through fear of death or great bodily harm, it should return a verdict of not guilty.

We do not think the charge given was adequate in this respect.

The defendants are entitled to a new trial, and it is so ordered.

New trial.