STATE OF NORTH CAROLINA v. ERNEST THOMAS "PETE" CORN

No. 21A82

(Filed 3 November 1982)

**1. Criminal Law § 87.3— autopsy report—past recollection recorded**
    An entire autopsy report could have been read to the jury by the pathologist who conducted the autopsy as past recollection recorded where the pathologist dictated the entire report while he conducted the autopsy. Therefore, selected passages of the report could also be read to the jury by the pathologist as past recollection recorded.

**2. Criminal Law § 86.6— impeachment of defendant—prior degrading conduct—good faith questions**
    In a prosecution for second degree murder, the prosecutor's cross-examination of defendant as to whether he had told a named person that he considered it a thrill to kill people and whether he had told two other persons that he was going to kill deceased if he didn't quit taking his marijuana was proper for impeachment purposes where the record failed to show that the questions were not asked in good faith.

**3. Homicide § 19.1 — self-defense — inadmissibility of criminal records of deceased**

   In a prosecution for second degree murder in which defendant contended that he acted in self-defense, records of prior convictions of the deceased for assault on his mother and injury to personal property belonging to his mother were not admissible for the purpose of establishing deceased's reputation for violence or for the purpose of showing what the defendant knew about the deceased's violent behavior.

**4. Criminal Law § 86.8 — impeachment of State's witness — improper question**

   The trial court did not err in refusing to permit defendant to impeach the State's eyewitness by questioning the witness about an incident in which he gave a false name and address to a woman after driving his truck into her yard where defense counsel failed to phrase his question in a manner designed to elicit information concerning the alleged false statement.

**5. Homicide § 28 — self-defense — show of force unnecessary — sufficiency of instructions**

   The instructions given the jury in a second degree murder case, when read as a whole, adequately stated in substance that the circumstances must be viewed from defendant's perspective and that a show of force was not necessary in order to find that defendant acted in self-defense, and the trial court did not err in refusing to give defendant's requested instruction that "A show of force by the deceased is not, however, necessary under the circumstances."

DEFENDANT appeals from judgment of *Owens, J.,* entered 22 October 1981 at the October 1981 Criminal Session of Superior Court, TRANSYLVANIA County.

Defendant was tried upon an indictment, proper in form, issued March 1980, charging him with the murder of Lloyd F. Melton on 20 November 1979. On 16 October 1981 the jury found defendant guilty of second degree murder. From the trial court's judgment ·sentencing him to life imprisonment, defendant appeals as a matter of right pursuant to G.S. 7A-27(a).

Originally, defendant was tried upon an indictment charging him with first degree murder and was so convicted of that charge on 24 March 1980. This Court reversed the conviction of first degree murder on the basis that the State failed to present sufficient evidence to show premeditation and deliberation and remanded the case for a new trial to determine whether defendant was guilty of second degree murder, voluntary manslaughter or not guilty. *State v. Corn,* 303 N.C. 293, 278 S.E. 2d 221 (1981). This appeal arises from that new trial.

The State's evidence tended to show that Lloyd F. Melton arrived at defendant's house on the morning of 20 November 1979. Defendant and Roy Ward were present at the house when Melton arrived. Shortly thereafter Melton, Ward and defendant left in Ward's truck and bought a fifth of Vodka and some grapefruit juice. They returned to defendant's house and drank some of the Vodka and grapefruit juice. Melton and Ward then left defendant's house and drove around Transylvania County for several hours, continuing to drink alcoholic beverages as they traveled.

At approximately 5:00 that afternoon they returned to defendant's home. Ward testified that defendant opened the door and looked out as they arrived. When Ward and Melton entered the house, defendant was lying on the couch in the living room with his hands behind his head. Melton sat down on the couch where defendant was lying and began to argue with him. During the argument defendant jumped up from the couch, shouted an obscenity, pulled a .22 caliber, semiautomatic rifle, from a crack between the couch cushion and the back of the couch, and shot Melton eight to ten times across the chest, killing him instantly. Ward left defendant's house immediately after the shooting and contacted law enforcement officers at the Brevard Police Department and at the Transylvania County Sheriff's Department. Several officers testified that upon arriving at defendant's house to investigate the shooting, they found the defendant in the yard, repeatedly stating that he "killed the son-of-a-bitch." Melton's body was discovered on the floor beside the couch in the living room.

Defendant testified in his own behalf, claiming that he shot Melton in self-defense. He stated that when Melton and Ward arrived at his home at about 5:00 p.m. on 20 November 1979, Melton walked over to the couch on which defendant was lying, grabbed defendant, jerked him around and attempted to hit him. During the altercation the parties exchanged vulgarities and defendant was thrown to the floor. Ward, who had entered the house immediately before Melton, arose from the chair in which he was sitting and moved toward the defendant with clenched fist. With both Melton and Ward advancing on him, defendant reached under the couch and grabbed the fully loaded .22 caliber rifle which he normally kept in that location. In an attempt to halt the

advance of Melton and Ward, defendant shot at Melton's leg but when Melton kept moving toward him, defendant shot Melton repeatedly in the chest. After the shooting, defendant walked across the street and called the Brevard Police Department. He then returned home and waited for law enforcement officers to arrive. Several officers testified that defendant was calm and cooperative during their investigation of the incident.

Defendant's evidence further tended to show that he was five feet seven inches tall and weighed approximately 140 pounds. Melton was five feet ten inches tall and weighed approximately 200 pounds. The evidence also indicated that Melton had a propensity to commit violent acts after drinking alcoholic beverages and that defendant was aware of this tendency. Roy Ward testified that he was six feet two inches tall and weighed 251 pounds. Defendant also stated that he feared Ward because Ward had said the night before the shooting that he had a black belt in Karate.

At the end of all the evidence the trial court instructed the jury that they could find defendant guilty of second degree murder, voluntary manslaughter, or not guilty. The jury found defendant guilty of second degree murder, sentencing him to life imprisonment.

*Rufus L. Edmisten, Attorney General, by Archie W. Anders, Assistant Attorney General, for the State.*

*Marc D. Towler, Assistant Appellate Defender for defendant.*

COPELAND, Justice.

[1] The defendant first assigns as error the trial court's refusal to strike the entire testimony of Dr. Lacy, the pathologist who conducted the autopsy on the body of Lloyd Melton. In support of this argument, defendant contends that since Dr. Lacy testified on cross-examination that he had no recollection of the autopsy independent of the written report, his entire testimony was incompetent as either present recollection refreshed or past recollection recorded. We find no merit in this claim.

The rule in this jurisdiction is that a witness may be aided in his testimony by either (1) present recollection refreshed, *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977), or (2) past recollection recorded. *State v. Wright*, 282 N.C. 364, 192 S.E. 2d 818 (1972).

Under present recollection refreshed the witness' memory is refreshed or jogged through the employment of a writing, diagram, smell or even touch. *Smith, supra.* 1 Brandis on North Carolina Evidence § 32 (2d rev. ed., 1982). When a witness' recollection is refreshed the testimony comes from his memory and not from the writing or diagram. Under past recollection recorded the witness is unable to testify from memory even after reviewing writings, diagrams, or any other stimuli which might refresh his memory. 1 Brandis on North Carolina Evidence § 33 (2d rev. ed. 1982). Under past recollection recorded, since the witness cannot testify from memory, the facts being elicited must be put into evidence by means of the writing. This can be done by having the witness read the writing to the jury. *Johnson v. Johnson,* 23 N.C. App. 449, 209 S.E. 2d 420 (1974), *cert. denied,* 286 N.C. 335, 211 S.E. 2d 212 (1974).

Although these two forms of recollection have distinct definitions, in practice the two differ only in degree. *United States v. Riccardi,* 174 F. 2d 883 (1949), *cert. denied,* 337 U.S. 941 (1949); 1 Brandis on North Carolina Evidence § 32 (2d rev. ed. 1982). After reviewing the transcript, we see no reason why the record of the autopsy could not have been introduced into evidence as past recollection recorded since Dr. Lacy dictated the entire report while he conducted the autopsy. *State v. Wright,* 282 N.C. 364, 192 S.E. 2d 818 (1972). We are equally confident that Dr. Lacy, the authenticating witness, could have read the entire autopsy report to the jury. *Cooper v. R.R.,* 170 N.C. 490, 87 S.E. 322 (1915). Since the transcript indicates that Dr. Lacy testified directly from his notes, we conclude that his testimony was nothing more than selected readings from his notes. Therefore, if the entire report may be admitted as past recollection recorded, then selected passages must also be admitted as past recollection recorded. Therefore we find no error in the doctor's testimony.

[2] In his second assignment of error, defendant asserts that the district attorney acted in bad faith by cross-examining him with the following two questions:

> (1) Q. Mr. Corn, did you relate to Kathy Fowler that you considered it a thrill to kill people?
>
> Mr. Hudson [defense counsel] objection.
>
> Court: Objection overruled.

State v. Corn

A. No sir.

Defendant's Exception No. 13.

(2) Q. Mr. Corn, did you make, did you tell, just shortly before the Melton boy was killed, did you sometime shortly before that tell Jack Orr and Martha McKinney that you were going to kill Lloyd Melton if he didn't quit pinching or taking your pot or marijuana. . . ?

Mr. Hudson: Objection.

Q. That he was going to pinch it one time too many, did you say that in their presence?

A. No sir.

The rule in this jurisdiction is that a defendant may be impeached on cross-examination by asking "disparaging questions concerning collateral matters relating to his criminal or degrading conduct." *State v. Williams*, 279 N.C. 663, 675, 185 S.E. 2d 174, 181 (1971); *State v. Dawson*, 302 N.C. 581, 276 S.E. 2d 348 (1981). However, the scope of such a cross-examination is limited by (1) the trial court's discretion and (2) by a requirement that the questions be asked in good faith. *Williams, supra.*

The defendant alleges that the district attorney did not ask the two questions, set out above, in good faith. However, "the rule in this jurisdiction is that the questions of the prosecutor will be considered proper *unless the record shows* that the question was asked in bad faith." *State v. Dawson*, 302 N.C. 581, 586, 276 S.E. 2d 348, 352 (1981). (Emphasis added.) The record of this case does not reveal any bad faith on the part of the district attorney. Even though defendant produced several affidavits which, standing alone, might suggest that the questions were not asked in good faith, these affidavits, when read with the record of the trial, do not show the questions were asked in bad faith. In fact, in response to defendant's objection to the first question, the district attorney claimed he had several reliable sources, identities of which he was willing to reveal to the court. No such offer was made for the second question since the objection was quickly overruled. As a result we feel the record does not reveal bad faith on the part of the prosecutor and therefore no error was committed.

[3]   As a third assignment of error, defendant claims the court erred by preventing his introduction into evidence of the records of the prior convictions of the deceased. Those convictions concerned an assault with a gun on the victim's mother and injury to personal property belonging to the victim's mother. As in this case, when self defense is raised as a defense, the defendant may produce evidence of the victim's character tending to show, "(1) that the victim was the aggressor or (2) that defendant had a reasonable apprehension of death or bodily harm, or both." 1 Brandis on North Carolina Evidence, § 106 (2d rev. ed. 1982). If defendant seeks to offer evidence for the purpose of showing the victim was the aggressor, it must be done through testimony concerning the victim's general reputation for violence, "but this rule does not render admissible evidence of specific acts of violence which have no connection with the homicide." *State v. LeFevers*, 221 N.C. 184, 185, 19 S.E. 2d 488, 489 (1942). *State v. Morgan*, 245 N.C. 215, 95 S.E. 2d 507 (1956). The excluded conviction records are clearly not evidence of the victim's reputation. Likewise, the records are not evidence of what the defendant actually knew. Therefore the records can be offered neither for the purpose of establishing the victim's reputation for violence nor for the purpose of showing what the defendant knew about the victim's violent behavior.

In addition, the conviction records are not admissible for the purpose of bolstering defendant's credibility. The evidence indicates that the records would have at best only partially supported what defendant said and would have clearly highlighted the fact that defendant was testifying only to what he knew and not to what was in fact true. Therefore, there was no error committed when the trial court excluded the victim's criminal records.

[4]   Defendant next assigns as error the trial court's refusal to allow him to impeach the State's only eyewitness. There is no doubt in this jurisdiction that a witness' credibility may be impeached by questions concerning specific acts of criminal or degrading conduct. *State v. Dawson*, 302 N.C. 581, 276 S.E. 2d 348 (1981). Defendant contends the court did not allow him to question the eyewitness concerning an incident in which the witness gave a false name and address to a woman after driving his truck into her yard. However, defense counsel failed to phrase his question

in a manner designed to elicit information concerning the alleged false statement. Even the district attorney made it clear that he would have no objection to questions dealing with the alleged false statement. The defense counsel refused to rephrase the question and requested the original question be answered into the record. We feel the original question was properly excluded and therefore no error was committed.

[5] In his final assignment of error, defendant contends the trial court improperly instructed the jury on the issue of self defense by failing to submit, in substance at least, specifically requested instructions. When instructing the jury, the trial court has the duty to, "declare and explain the law arising on the evidence." G.S. 15A-1232; *State v. Ferdinando*, 298 N.C. 737, 260 S.E. 2d 423 (1979). Although a trial judge is not required to give requested instructions verbatim, *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973), he is required to give the requested instruction at least in substance if it is a correct statement of the law and supported by the evidence. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976).

Specifically, defendant argues the trial court's instruction deprived him of the defense of self defense by failing to state that, "A show of force by the deceased is not, however, necessary under the circumstances." We disagree with defendant's position. The instructions given the jury, when read as a whole, as they must be, adequately state in substance that the circumstances must be viewed from defendant's perspective and that a show of force was not necessary in order to find he acted in self defense. Unlike *State v. Francis*, 252 N.C. 57, 112 S.E. 2d 756 (1960), where the instructions virtually eliminated the defendant's right to self defense, the instructions given in this case preserved the defense of self defense. Therefore we find no error.

After examining the record and each of defendant's assignments of error, we conclude that defendant's trial was free from reversible error.

No error.