STATE OF NORTH CAROLINA v. MALVIN WHITE

No. 8410SC1165

(Filed 1 October 1985)

1. **Searches and Seizures § 14— search of defendant's person at airport—consent voluntary**

    Defendant waived any right to object to a stop and freely and voluntarily consented to a search which yielded heroin and cocaine where two officers observed defendant deplane at Raleigh-Durham Airport and asked to see his ticket and driver's license, asked defendant if he would talk with them, suggested that they talk in a nearby office, and asked if defendant would consent to a search of his person, to all of which defendant agreed.

2. **Criminal Law §§ 75.1, 84— seizure of defendant in airport—statements to officers admissible**

    In a prosecution for trafficking in heroin by possession and transportation and possession with intent to sell cocaine, statements made by defendant to police were not inadmissible on the ground that officers seized defendant in violation of the Fourth Amendment where the officers approached defendant in a public place, an airport, did not display any weapons or uniforms, requested but did not demand defendant's identification and ticket, and then immediately returned them. Nothing in the facts suggests defendant had any objective reason to believe that he was not free to end the conversation and continue on his way.

3. **Criminal Law § 91— speedy trial dismissal denied—no error**

    Defendant's statutory speedy trial motions for dismissal of charges of trafficking in heroin by possession and transportation and possession with intent

to sell cocaine were properly denied where 443 days elapsed between his indictment and trial, but 285 days elapsed from the date defendant filed a motion to suppress to the date it was heard, and court ordered continuances and corresponding exclusions left 105 unexcluded days. Although the trial judge did not make detailed findings of fact for each period of exclusion, the trial court did not err by excluding the 285 days where defendant requested several continuances during that period, changed counsel twice, apparently consented to a "mistrial" of a hearing on his motion, and spent additional time awaiting a transcript of the hearing. G.S. 15A-701 *et seq.*

**4. Constitutional Law § 30; Bills of Discovery § 6— discovery of police reports denied—no error**

In a prosecution for trafficking in heroin by possession and transportation and possession with intent to sell cocaine, the trial court did not err by denying defendant's motion for the police reports of the arresting officers.

**5. Criminal Law § 7.5— requested instruction on duress—given only as to defendant and family—no error**

In a prosecution for trafficking in heroin by possession and transportation and possession with intent to sell cocaine, the trial court did not err by confining its instruction on the defense of duress to threats against defendant and his family where the only evidence relied on by defendant to support the instruction was testimony that a grenade-wielding individual approached defendant in his place of business and told him that if he did not transport drugs "where the grenade lands would be [defendant's] responsibility," this evidence came after extensive testimony about threats against defendant's family, the court instructed the jury repeatedly that threats against defendant and his family could excuse the crime, and the court on several occasions referred to defendant's fear for "himself or another."

APPEAL by defendant from *Brewer, Judge.* Judgments entered 21 March 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 23 August 1985.

This is a criminal case involving trafficking in heroin by possession and transportation and possession with intent to sell cocaine. Following denial of his motions to suppress the State's evidence, defendant was found guilty. From judgments imposing concurrent sentences of 14 years, 14 years and 3 years, defendant appeals. The facts found by the court following the hearing on the motions to suppress are as follows:

Captain Brown of the Wake Sheriff's Department and SBI Agent Turbeville were observing passengers deplaning at Raleigh-Durham Airport. The plainclothes officers noticed defendant. He was alone, appeared to be looking around and was wearing a jacket and jeans. When the officers attempted to make eye con-

---

---

tact with defendant, he looked at them and then placed a hand-kerchief to his face. The officers followed him. He asked the officers for directions on how to leave the terminal which they gave. The officers followed defendant. Though defendant carried no luggage and did not pick up any, he went to the luggage area.

The officers accosted defendant outside the terminal, identified themselves as police, and asked to see his ticket and driver's license. They checked them and returned them to defendant. The officers advised defendant that they were conducting a narcotics investigation and asked him if he would talk with them. He agreed to do so. The officers suggested that they talk in a nearby office, and defendant agreed to accompany them. Defendant testified that because "where he had been brought up, one did not refuse to go with two police officers," he felt he had no alternative but to comply, but the officers made no threats or promises to make him accompany them.

In the office, the officers again identified themselves as narcotics officers and requested defendant's cooperation. They asked if defendant would consent to a search of his person and defendant consented. The search yielded packages containing heroin and cocaine. Defendant was arrested immediately.

*Attorney General Thornburg by Assistant Attorney General Grayson G. Kelley for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender David W. Dorey for defendant-appellant.*

EAGLES, Judge.

I

[1] The principal issue before us involves the denial of defendant's motions to suppress. Because defendant did not except to any of the findings of fact recited above, they are binding on appeal. *State v. Colbert*, 65 N.C. App. 762, 310 S.E. 2d 145, *rev'd on other grounds*, 311 N.C. 283, 316 S.E. 2d 79 (1984). The findings of fact establish that defendant by his own consent waived any right to object to the stop and search. We base our conclusion on the opinion of the United States Supreme Court on strikingly similar facts in *United States v. Mendenhall*, 446 U.S. 544, 64 L.Ed. 2d

497, 100 S.Ct. 1870, *reh'g denied,* 448 U.S. 908, 65 L.Ed. 2d 1138, 100 S.Ct. 3051 (1980).

## II

We first address the motion to suppress the fruits of the search. In *Mendenhall,* as here, two narcotics agents observed defendant deplaning. They stopped her and asked to see her ticket and driver's license, which they returned to her. Unlike the instant case, the ticket was in a different name from the license. The agents then asked defendant to accompany them to their office nearby, and defendant did so. In the office, the agents asked to search defendant's person and bag, and she consented. The search resulted in discovery of heroin, and defendant was immediately arrested. The court found that no Fourth Amendment rights had been violated, since the record supported the trial court's determination that defendant "freely and voluntarily" consented to the search. The only difference of significance between the *Mendenhall* facts and the instant case was that the officers, in addition to requesting Mendenhall's cooperation, also told her she was free to refuse. While the Supreme Court considered this "highly relevant," *id.* at 558-59, 64 L.Ed. 2d at 512, 100 S.Ct. at 1879, it also reiterated its earlier holding that knowledge of a right to refuse is not *required* to prove effective consent. *Id., following Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973) (reversing a Court of Appeals decision requiring such proof). Whether effective consent was given to a search is a question to be determined by the court in light of all the circumstances. *Id.; see State v. Fincher,* 309 N.C. 1, 305 S.E. 2d 685 (1983); *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569, *cert. denied,* 459 U.S. 1080, 74 L.Ed. 2d 642, 103 S.Ct. 503 (1982) (both following *Schneckloth*).

We note that issue of effective consent to search has been scrutinized by our Supreme Court in *State v. Fincher, supra.* There our Supreme Court upheld a consent to search given by a minor defendant who had been arrested and handcuffed, and was in the presence of at least ten police officers. Fincher suffered from substantial psychological, emotional and developmental disabilities and was told by officers that if he did not give his consent then, officers would obtain a warrant and "[e]ither way, we are going to search the apartment." When the totality of the cir-

cumstances in the instant case is considered in light of the *Fincher* precedent, it is clear that the trial court did not err here in its conclusion that the defendant consented to the search.

Relying on *Mendenhall* and *Fincher,* we hold that on these facts the trial court could and did correctly conclude that defendant here freely and voluntarily consented to the search which yielded the incriminating drugs.

### III

**[2]** Defendant next argues that the trial court improperly admitted statements made by him to police, on the ground that the officers "seized" him in violation of the Fourth Amendment and his statements were the "fruit of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct. 407 (1963). We look again to *Mendenhall* for guidance. The *Mendenhall* court did not reach agreement on whether Mendenhall had been seized within the meaning of the Fourth Amendment at the time of the initial stop. The plurality opinion enunciated an objective test for such determinations: ". . . a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave." 446 U.S. at 554, 64 L.Ed. 2d at 509, 100 S.Ct. at 1877. Though the test was enunciated in a plurality opinion in *Mendenhall,* it is the law in North Carolina. *State v. Freeman,* 307 N.C. 357, 298 S.E. 2d 331 (1983); *State v. Davis,* 305 N.C. 400, 290 S.E. 2d 574 (1982).

Following *Mendenhall,* we again conclude that defendant's constitutional rights were not infringed. The officers approached defendant in a public place, did not display any weapons or uniforms, requested but did not demand defendant's identification and ticket and then immediately returned them. *Compare Mendenhall,* 446 U.S. at 555, 64 L.Ed. 2d at 510, 100 S.Ct. at 1877. Nothing in the facts before us suggests defendant had any *objective* reason to believe that he was not free to end the conversation and continue on his way. *See id.* This assignment is also overruled, as well as defendant's contention that the illegal seizure tainted his consent.

IV

[3]  Defendant was indicted 13 December 1982 (following arrest) and brought to trial 1 March 1984, a total of 443 days later. He made several motions seeking dismissal of the charge for violation of his statutory right to a speedy trial. We note that neither his motions at trial nor his argument here purport to assert a violation of his constitutional right to a speedy trial. The latest speedy trial motion came after the case was called for trial, but before the jury was impanelled. At that time defense counsel asked the court to reexamine its previous computations and also renewed the motion to dismiss, noting the passage of additional time since the most recent defense motion. From the court's summary denial of the motions, defendant assigns error.

The Speedy Trial Act, G.S. 15A-701 *et seq.*, established a new statutory right to trial within 120 days of the last act triggering the criminal process. G.S. 15A-701(a); *State v. Jones,* 70 N.C. App. 467, 320 S.E. 2d 26 (1984). It adopted in part provisions of federal speedy trial statutes. 18 U.S.C. Section 3161 *et seq.; State v. Rogers,* 49 N.C. App. 337, 271 S.E. 2d 535, *dis. rev. denied,* 301 N.C. 530, 273 S.E. 2d 464 (1980). Both the federal and the North Carolina statutes allow courts to exclude periods of time from computation of the statutory period. 18 U.S.C. Section 3161(h); G.S. 15A-701(b). Indeed, the exclusions appear almost to have swallowed up the rule.

Once a defendant shows that the 120-day period under the Act has been exceeded, the State must assume the burden of justifying periods it contends were properly excluded. *State v. Herbin,* 64 N.C. App. 711, 308 S.E. 2d 338 (1983). On appeal, however, the burden shifts: once the motion to dismiss has been denied, defendant-appellant assumes the twin burdens of assuring that the record is properly made up, *State v. Alston,* 307 N.C. 321, 298 S.E. 2d 631 (1983), and showing that error has occurred to his or her prejudice. G.S. 15A-1443(a). If the record is deficient or silent upon a particular point, we will presume that the trial judge acted correctly. *State v. Dew,* 240 N.C. 595, 83 S.E. 2d 482 (1954). We have examined the record here with these principles in mind.

The largest exclusion shown by the record consists of 285 days, being the period from 3 March 1983, when defendant through counsel filed his motion to suppress, to 13 December

1983, when the motion was finally heard. Defendant attacks the exclusion as unreasonable, particularly by comparison with exclusions made in other cases.

Although our opinions have suggested that trial judges should make detailed findings of fact for each period of exclusion, *State v. Rogers, supra,* and the trial court's failure to do so here hinders effective appellate review, neither the Act nor our cases *require* detailed findings. *Compare* 18 U.S.C. Section 3161(h)(8)(A) (detailed findings apparently required). Time periods pending pretrial motions are properly excludable under the Act. G.S. 15A-701 (b)(1)d. There is no time limit within which motions must be heard; the law merely requires hearing "within a reasonable time," *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981), allowing sufficient time for preparation by the parties. What is a "reasonable time" depends on the circumstances of the individual case.

Here defendant requested several continuances during the period of 3 March through 13 December, and changed counsel twice. Defendant apparently consented to a "mistrial" of a hearing on his motion in August, and additional time was spent awaiting a transcript of the hearing. Defendant has not directed us to any record evidence suggesting that these delays were caused by dilatory tactics of the State. On this record, then, although disapproving of the exclusion of such large blocks of time without detailed findings, we must hold that the trial court did not err in excluding the 285 days.

Under the circumstances detailed above, we do not find the 285-day period so unreasonable *per se* to require reversal. *See State v. Fearing,* 304 N.C. 499, 284 S.E. 2d 479 (1981) (271-day exclusion approved). Neither the Supreme Court, this Court, nor the legislature has established a maximum outer limit within which a case must be tried in order to comply with a defendant's statutory right to speedy trial. Defendant's argument is more properly addressed in a constitutional context. No constitutional speedy trial question was raised below and we will not consider it here. *State v. Hunter,* 305 N.C. 106, 286 S.E. 2d 535 (1982).

Our ruling still leaves 158 days between indictment and trial. The record reflects further court-ordered continuances and corresponding exclusions from 16 December 1983 to 3 January 1984

(18 days), from 9 January to 23 January 1984 (14 days), and from 23 January to 13 February 1984 (21 days). Subtracting these periods leaves 105 unexcluded days between 13 December 1982 and 1 March 1984. This amount of time falls within the limits established by the Act. We therefore hold that defendant's motions were properly denied.

## V

[4] Defendant assigns error to the denial of his motion for disclosure of the police reports of Agents Brown and Turbeville. Our Supreme Court has recently rejected similar contentions. *State v. Alston, supra.* This assignment is without merit.

## VI

[5] Defendant finally assigns error to the trial court's failure to instruct the jury as he requested on the defense of duress. Defendant argues that the court erroneously confined the defense of duress to threats against defendant and his family, leaving out threats to his business patrons. In order to prevail here, defendant must show that the requested instruction was not given in substance, and that substantial evidence supported the omitted instruction. *State v. Davis,* 291 N.C. 1, 229 S.E. 2d 285 (1976); *State v. Corn,* 307 N.C. 79, 296 S.E. 2d 261 (1982). The trial court need only give the jury instructions supported by a reasonable view of the evidence. *State v. Lampkins,* 283 N.C. 520, 196 S.E. 2d 697 (1973). The only evidence relied on by defendant to support the requested additional instruction was testimony that a grenade-wielding individual approached defendant in his place of business and told him that if he did not transport drugs "where the grenade lands would be [defendant's] responsibility." This came after extensive testimony about threats against defendant's family. The court instructed the jury repeatedly that threats against defendant and his family could excuse the crime, and on several occasions referred to defendant's fear for "himself or another." Viewing the charge as a whole in light of the evidence, as we must, *State v. Dietz,* 289 N.C. 488, 223 S.E. 2d 357 (1976), we conclude that the omission was not so significant as to change the result. *State v. Sherian,* 234 N.C. 30, 65 S.E. 2d 331 (1951), relied on by defendant, is distinguishable in that there the court failed entirely to instruct the jury expressly on the defense of duress. Here, on the other hand, the court repeatedly and fully in-

structed the jury on the elements of the defense, omitting only mention of threats to business patrons suggested by a single statement in a lengthy trial. On this record, we find no prejudicial error.

We conclude that defendant received a fair trial, free of prejudicial error.

No error.

Judges JOHNSON and PARKER concur.