STATE OF NORTH CAROLINA v. ANTAVIO DERRELL BEST

No. COA08-659

(Filed 7 April 2009)

**1. Accomplices and Accessories— accessory after the fact— duress—conflicting evidence**

Duress would not have been an appropriate ground for dismissal of charges of being an accessory after the fact to first-degree murder and first-degree kidnapping where the evidence was conflicting. The trial court's denial of defendant's motion to dismiss was correct.

**2. Criminal Law— duress—accessory after-the-fact—instructions in context**

The court's failure to specifically instruct on duress in reference to the accessory after the fact charges was not prejudicial to the defendant because, considered contextually, the trial court instructed on duress as a defense to all of the charges. Moreover, the jury necessarily found that defendant did not act under duress when it found him guilty of "knowingly and willfully" rendering assistance.

**3. Criminal Law— requested instructions—given in substance**

A requested instruction was given in substance even though it was not given specifically where the requested instruction was that defendant could rely on evidence presented in the State's case-in-chief and the given instruction was that the jury should consider all of the evidence.

**4. Constitutional Law— double jeopardy—accessory to kidnapping and accessory to murder—basis of murder not clear**

Double jeopardy forbids punishing a defendant for both a felony murder and the underlying felony. Judgment on a conviction for being an accessory after the fact to first-degree kidnapping was arrested where defendant was also convicted of being an accessory after the fact to first-degree murder and the jury's verdict did not indicate whether that conviction was based on premeditation or on felony murder derived from the kidnapping.

**5. Accomplices and Accessories— instructions—not confusing in context**

An allegedly confusing instruction on accessory after the fact to first-degree kidnapping was not plain error when considered in context with the clear, extensive, and repeated instructions on accessory after the fact to burglary and first-degree murder.

**6. Criminal Law— omission of element from substantive instruction—included in mandate—no plain error**

The omission of an element of accessory after the fact to first-degree murder from the substantive instruction was not plain error where defendant conceded that the mandate was correct.

**7. Sentencing— restitution—accessory after the fact—causal link to harm**

A restitution award after convictions for being an accessory after the fact to first-degree murder and kidnapping was vacated because there was no direct and proximate causal link between defendant's actions as an accessory and the harm caused to the victims' families.

Appeal by defendant from judgments entered 3 October 2007 by Judge Phyllis Gorham in Superior Court, Sampson County. Heard in the Court of Appeals 17 November 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Richard L. Harrison, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for defendant.*

WYNN, Judge.

A defendant "may not be punished both for felony murder and for the underlying, 'predicate' felony, even in a single prosecution."[1] Defendant Antavio Derrell Best argues that his sentences for accessory-after-the-fact to first-degree murder and accessory-after-the-fact to first-degree kidnapping violate double jeopardy. Because the jury could have found Defendant guilty of accessory after the fact to first-degree murder based on the kidnapping, pursuant to the felony murder rule, we arrest judgment on Defendant's convictions for accessory-after-the-fact to first-degree kidnapping. We also vacate the award of restitution because there is an insufficient causal link to support the award.

On 15 November 2003, Defendant drove his car to pick up his friends Stephen Antonio Bell and Rafty Brown. After spending 20 to 60 minutes at a "bootleg liquor house," Defendant drove to a store, where Mr. Brown gave him money to buy duct tape. Defendant bought the tape, gave it to Mr. Brown, and said he needed to get home to his family. However, Mr. Brown said he needed to go to someone's house, and gave directions as Defendant drove there. Mr. Brown instructed Defendant to turn out the headlights and to wait in the car; thereafter, he and Mr. Bell went inside the house.

About 10 to 15 minutes later, Mr. Brown returned to the car and told Defendant that he had duct taped some people and needed to

---

1. *State v. Gardner*, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986).

take them away. Defendant told Mr. Brown that "he didn't want any part of this." In response, Mr. Brown pointed a shotgun at Defendant and told him that he would kill Defendant and his family if Defendant did not help. Mr. Brown instructed Defendant to open the trunk of his car, and Defendant complied. Thereafter, Mr. Brown and Mr. Bell led three people, one after the other, out of the house to Defendant's car; they placed a male (later identified as Randolph Carr) and a female (later identified as Carrie Jones) into the trunk, and another male (later identified as Jimmy Ray Turner) into the back seat.[2] Mr. Bell got into the front passenger's seat and Mr. Brown sat in the back seat on the driver's side, directly behind Defendant.

Defendant drove, following Mr. Brown's directions. In a statement he later gave to police, Defendant recalled hearing Mr. Brown scream at the male victim in the back seat, "Where are the drugs, Jimmy?"

At some point after riding for several miles, Mr. Brown directed Defendant to stop the car; he got out of the car, removed some logs from a driveway, and instructed Defendant to back his car in. Mr. Brown told Defendant to open the trunk, and not to move. Then, Mr. Bell took the male victim out of the backseat of the car; Mr. Brown removed the other victims from the trunk. Mr. Brown and Mr. Bell then walked the three victims into the woods while Defendant stayed in the car. Defendant stated that he heard Mr. Brown tell the three victims, "You are going to die." After Mr. Bell came back and stood by the driver's side window of Defendant's car, Defendant heard sounds of people being beaten and a shotgun being cocked, but not discharged. Mr. Brown came back to Defendant's car, retrieved a cinder block, and returned to the woods. Defendant stated that he heard sounds of people being beaten for the next 10 to 15 minutes.

Thereafter, Mr. Brown returned to Defendant's car with blood on his face, and without his shirt. Mr. Brown then instructed Defendant to drive to Mr. Brown's mother's house where he obtained a large gasoline jug, got back into Defendant's car, and instructed him to drive back to where the three victims were located.

When they returned to the scene, Mr. Brown told Mr. Bell to burn the three bodies, but Mr. Bell refused. Mr. Brown then took the gas container into the woods, and Defendant recalled seeing flames shortly thereafter. Mr. Brown returned to Defendant's car and in-

---

2. Defendant does not contest that these three individuals were murder victims; accordingly, we refer to them in this opinion as victims.

structed him to drive back to Mr. Brown's mother's house, where Mr. Brown left the gas container. Mr. Brown got back into the car, and directed Defendant to drive to the Village Inn Motel in Warsaw. When they arrived, Mr. Brown and Mr. Bell got out, and Mr. Brown told Defendant that he would kill him and his family if Mr. Brown heard anything about the murders.

After leaving Mr. Brown and Mr. Bell, Defendant washed the exterior and vacuumed the interior of his car. In his statement to police, Defendant said that he did not report the crimes after leaving Mr. Brown and Mr. Bell because he feared for the safety of himself and his family. The next morning, Mr. Bell called Defendant from the motel for a ride to Mount Olive. Defendant went to pick up Mr. Brown and Mr. Bell, but they had already checked out when he arrived.

At trial, Cassandra Harding testified that she had been in a relationship with Mr. Brown, knew Mr. Bell and Defendant, and that she had picked up Mr. Brown and Mr. Bell from the motel on 16 November 2003. Ms. Harding also testified that she attended a party that evening, where she saw Defendant and Mr. Bell "standing side-by-side basically the whole time that I was there."

On 21 November 2003, Defendant went with his father to the police station to give a statement. After giving his statement, Defendant was placed under arrest and read his *Miranda* rights. He then gave a second statement which was substantially similar to the first.

Defendant was indicted for three counts each of first-degree murder, first-degree kidnapping, accessory-after-the-fact to first-degree murder, accessory-after-the-fact to first-degree kidnapping, one count of burglary, and one count of accessory-after-the-fact to burglary. A jury acquitted Defendant of the three first-degree murder charges, but deadlocked on the remaining charges. At a second trial on the remaining charges, the jury found Defendant not guilty of the three counts of kidnapping, the count of first-degree burglary, and the count of accessory-after-the-fact to burglary. However, Defendant was found guilty of three counts each of accessory-after-the-fact to first-degree murder and accessory-after-the-fact to first-degree kidnapping.

Defendant appeals from these judgments arguing: (I) the evidence was insufficient to support the accessory-after-the-fact to first-degree murder and accessory-after-the-fact to first-degree kidnapping charges; (II) the trial court committed plain error by failing to instruct the jury that duress could be a defense to accessory-after-the-fact to

first-degree murder and accessory-after-the-fact to first-degree kidnapping; (III) the trial court erred by failing to instruct that Defendant could rely on evidence presented in the State's case-in-chief; (IV) his convictions for accessory-after-the-fact to first-degree murder and accessory-after-the-fact to first-degree kidnapping violate his right against double jeopardy because the same evidence was used to establish elements of both crimes, and because kidnapping was the predicate offense to his accessory-after-the-fact to first-degree murder convictions; (V) the trial court committed plain error by giving a confusing and incomplete instruction; (VI) the trial court committed plain error by omitting an element from its instruction on accessory-after-the-fact to first-degree murder; and (VII) the trial court erred by ordering him to pay restitution.

I.

**[1]** In his first assignment of error, Defendant argues that the trial court should have granted his motion to dismiss the accessory-after-the-fact charges because the State introduced exculpatory evidence and its case-in-chief established, if anything, that Defendant was a principal offender, not an accessory. We disagree.

To withstand a motion to dismiss, the State must present "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (citation omitted). The State is entitled to the most favorable view of the evidence, including all reasonable inferences. *Id.* (citation omitted).

The elements of accessory-after-the-fact are: (1) a principal has committed the felony; (2) Defendant gave assistance to the principal to evade detection, arrest or punishment; and (3) Defendant knew the principal committed the felony. *State v. Barnes*, 116 N.C. App. 311, 316, 447 S.E.2d 478, 480 (1994) (citing *State v. Duvall*, 50 N.C. App. 684, 691, 275 S.E.2d 842, 849, *rev'd on other grounds*, 304 N.C. 557, 284 S.E.2d 495 (1981)). Moreover, accessory-after-the-fact "is a substantive crime-not a lesser degree of the principal crime," so a defendant may not be charged and tried as a principal, but convicted as an accessory. *State v. Johnson*, 136 N.C. App. 683, 695, 525 S.E.2d 830, 837 (2000).

Here, notwithstanding any exculpatory evidence in its case-in-chief, the State presented substantial evidence of each element of

accessory-after-the-fact to first-degree murder and kidnapping. Specifically, the State's evidence showed that Defendant watched Mr. Brown and Mr. Bell put the bound victims into his car. He heard Mr. Brown telling the victims they were going to die as Mr. Brown led them into the woods. After hearing the sounds of people being beaten, he drove Mr. Brown and Mr. Bell from the crime scene to Mr. Brown's mother's house, and then back to the crime scene. Defendant heard Mr. Brown tell Mr. Bell to set the victims on fire; he also heard Mr. Bell's refusal. After watching Mr. Brown go back into the woods with the gas container, and seeing flames and smoke coming from the crime scene, Defendant drove Mr. Brown and Mr. Bell to the motel. Significantly, he washed the exterior and vacuumed the interior of his car the same night. Finally, he went back to pick up Mr. Brown and Mr. Bell the next day, and appeared at a party with Mr. Bell the next night. Defendant reported the events to police several days later.

Moreover, any evidence in the State's case-in-chief tending to show that Defendant acted under duress did not require the trial court to dismiss the accessory-after-the-fact charges. Defendant's duress defense presented a question of fact for the jury to decide; indeed, in the face of conflicting evidence, duress was not an appropriate ground for the trial court to grant Defendant's motion to dismiss. *Compare State v. Lane*, 3 N.C. App. 353, 355, 164 S.E.2d 618, 619 (1968) (dismissal not appropriate in homicide prosecution where State relied upon statement by defendant containing exculpatory and inculpatory evidence on whether killing was accidental); *with State v. Carter*, 254 N.C. 475, 479, 119 S.E.2d 461, 464 (1961) (where State relies on a defendant's exculpatory statements, which are "not contradicted or shown to be false by any other facts or circumstances in evidence," dismissal is appropriate). Giving the State the most favorable view of the evidence, substantial evidence was presented on each element of both accessory-after-the-fact charges. Accordingly, Defendant's first two assignments of error are without merit.

II.

[2] Defendant next argues that the trial court committed plain error by failing to instruct the jury that the duress defense also applied to the accessory-after-the-fact charges.

A trial court is required to give a requested instruction "at least in substance if it is a correct statement of the law and supported by the evidence." *State v. Corn*, 307 N.C. 79, 86, 296 S.E.2d 261, 267 (1982) (citing *State v. Monk*, 291 N.C. 37, 229 S.E.2d 163 (1976)). A jury

instruction must be construed contextually, and if "the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal." *State v. Chandler*, 342 N.C. 742, 751-52, 467 S.E.2d 636, 641 (1996) (citations omitted). "Furthermore, insubstantial technical errors which could not have affected the result will not be held prejudicial." *Id.* (citations omitted).

Defendant cites *State v. Sherian*, 234 N.C. 30, 34, 65 S.E.2d 331, 333 (1951), in support of his argument that the trial court's failure to specifically instruct that duress is applicable to accessory-after-the-fact amounts to plain error. However, this Court recognized in *State v. White*, 77 N.C. App. 45, 52-53, 334 S.E.2d 786, 792 (1985), that in *Sherian* "the court failed entirely to instruct the jury on the defense of duress." In *White*, on the other hand, the trial court "repeatedly and fully instructed on the elements of [duress]." Therefore, this Court deemed any omission insignificant, and distinguished *Sherian* on that basis. *Id.* Thus, the Court in *White* held that the defendant received a trial free of prejudicial error.

Likewise, *Sherian* is also distinguishable from this case. Here, the trial court fully instructed on the elements of duress, although not specifically in reference to the accessory-after-the-fact charges. The trial court gave the following instruction on duress:

> There is evidence in this case tending to show that the defendant acted only because of duress. The burden of proving duress is upon the defendant. It need not be proven beyond a reasonable doubt, but only proved to your satisfaction. The defendant would not be guilty of these crimes if his actions were caused by a reasonable fear that he or another would suffer immediate death or serious bodily injury if he did not commit the crime. His assertion of duress is a denial that he committed any crime. The burden remains on the State to prove the defendant's guilt beyond a reasonable doubt.

Thereafter, and with specific reference to the accessory-after-the-fact to first-degree murder charge, the trial court instructed as follows:

> So I charge you that if you find from the evidence beyond a reasonable doubt that another person committed three counts of first-degree murder . . . and that thereafter, on or about the alleged date, the defendant, knowing another person to have committed three counts of first-degree murder knowingly and willfully assisted him in attempting to escape detection, arrest

and punishment, it would be your duty to return a verdict of guilty as an accessory after the fact to first-degree murder.

Therefore, considering the jury instructions contextually, the trial court in fact instructed on duress as a defense to all charges. By generally instructing that Defendant would not be guilty of "these crimes" if the jury found duress, and that Defendant's assertion of duress is a denial that he committed "any crime," the trial court's failure to specifically instruct on duress in reference to the accessory-after-the-fact charges was not prejudicial to Defendant.

Moreover, the trial court specifically instructed that the jury would have to find that Defendant "knowingly and willfully" assisted the principal before it could find him guilty as an accessory-after-the-fact to first-degree murder. The concept of "knowingly and willfully" giving assistance is contrary to the concept of duress; therefore, the jury necessarily found that Defendant did not act under duress when it found him guilty of "knowingly and willfully" rendering assistance. *See State v. Strickland*, 307 N.C. 274, 297, 298 S.E.2d 645, 660 (1983) ("No act done 'fully under the compulsion of fear' could be a willful act under this instruction. The jury was required to find that the defendant did not act voluntarily (willfully), but rather in response to coercion based on fear."), *overruled on other grounds, State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). Accordingly, this assignment of error is without merit.

## III.

[3] Defendant next argues that the trial court erred by failing to instruct that Defendant could rely on evidence presented in the State's case-in-chief.

As noted above, a trial court must give a requested instruction if it is a correct statement of the law and it is supported by substantial evidence. *Corn*, 307 N.C. at 86, 296 S.E.2d at 267 (citations omitted). Still, the trial court's instructions must be viewed contextually and insubstantial technical errors will not be deemed prejudicial. *Chandler*, 342 N.C. at 751-52, 467 S.E.2d at 641 (citations omitted).

In this case, although the trial court declined to give the specific instruction Defendant requested, he still received the benefit of such instruction from the following:

You should consider *all of the evidence*, arguments, contentions, and positions urged by attorneys and any other contention that

arises from the evidence and using your common sense, you must
determine the truth in this case.

Thus, the trial court gave the requested instruction in substance, even
though the court declined to give it specifically. Accordingly, this
assignment of error is without merit.

## IV.

[4] Defendant next makes two related arguments that his convictions
for accessory-after-the-fact to first-degree kidnapping should be
vacated because of double jeopardy concerns: (1) evidence that the
victims were seriously injured was used to establish first-degree mur-
der and first-degree kidnapping; and (2) the jury could have found
first-degree murder based on the kidnapping, pursuant to the felony
murder rule. Defendant did not object at sentencing, or move to
amend or arrest judgment, nor did he assign plain error in this appeal.
Thus, he has failed to preserve this assignment of error for our
review. However, finding that the second of Defendant's double jeop-
ardy arguments has merit, we address that issue pursuant to N.C. R.
App. P. 2 (2007).

Under the Double Jeopardy Clause, a defendant "may not be pun-
ished both for felony murder and for the underlying, 'predicate'
felony, even in a single prosecution." *State v. Gardner*, 315 N.C. 444,
460, 340 S.E.2d 701, 712 (1986). However, the legislature may specifi-
cally approve cumulative punishments for the same conduct without
offending the Double Jeopardy Clause. *Id.* (citing *Missouri v.
Hunter*, 459 U.S. 359, 368-69, 74 L. Ed. 2d 535, 544 (1983)). In the
absence of legislative authorization, the consolidation of multiple
convictions for the same conduct does not alleviate double jeopardy
concerns "because the separate convictions may still give rise to
adverse collateral consequences." *State v. Etheridge*, 319 N.C. 34, 50,
352 S.E.2d 673, 683 (1987) (citing *Ball v. United States*, 470 U.S. 856,
84 L. Ed. 2d 740 (1985)).

Here, after the trial judge rendered her judgment of sentencing in
open court, the Assistant District Attorney asked: "Your Honor, are
you arresting judgment on the kidnappings?" The judge responded: "I
consolidated them, consolidated all three of them. There are three
judgments, so there's three. I have consolidated them into that."
However, Defendant points out that the jury's verdict sheets do not
indicate whether it found first-degree murder on the basis of pre-
meditation and deliberation, or felony murder based on first-degree
kidnapping. Thus, if the jury found felony murder based upon the kid-

napping, consolidation of the convictions did not cure a double jeopardy violation. *Etheridge*, 319 N.C. at 50, 352 S.E.2d at 683.

The State argues that double jeopardy is not implicated by Defendant's sentencing for both offenses because accessory-after-the-fact is a separate and distinct crime from both of the principal felonies. This would be a persuasive argument if the jury's verdicts indicated that it found first-degree murder on the basis of premeditation and deliberation, and not pursuant to the felony murder rule, because the kidnapping would not be the "predicate" offense to first-degree murder. However, the jury's verdict is ambiguous, and it was instructed on both theories of first-degree murder. Therefore, this Court must treat the convictions as if the jury found first-degree murder pursuant to the felony murder rule. *See, e.g., State v. McLaughlin*, 286 N.C. 597, 610-11, 213 S.E.2d 238, 246-47 (1975), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976).

We are persuaded that the rationale for the general rule—that a principal may not be punished for felony murder and the underlying felony—should be equally applicable to convictions for being an accessory-after-the-fact to felony murder and the underlying felony. The State cites no authority holding otherwise. Accordingly, we arrest judgment on Defendant's convictions for accessory-after-the-fact to first-degree kidnapping. *See State v. Thompson*, 280 N.C. 202, 217, 185 S.E.2d 666, 676 (1972) (arresting judgment on felonious breaking and entering and felonious larceny convictions where those convictions provided basis for felony murder conviction).

V.

[5] Defendant next argues that the trial court's confusing instruction on accessory-after-the-fact to first-degree kidnapping was plain error. In support of his contention, Defendant points to the following excerpt of the trial court's instructions:

> If you find from the evidence beyond a reasonable doubt that another person committed first-degree kidnapping, then it would be your duty to find that another committed first-degree kidnapping. If you do not so find or if you have a reasonable doubt as to one or more of these things, then you will not find that another person committed first-degree kidnapping.

> If you do not so find or have a reasonable doubt that the other person committed first-degree kidnapping, then you must consider whether the other person committed first-degree burglary.

Defendant points only to this excerpt, ignoring the preceding portion of the accessory-after-the-fact to first-degree kidnapping instruction, which correctly stated the law as follows:

> Now I charge that for you to find the defendant guilty as an accessory after the fact to first-degree kidnapping, you must find that the other person unlawfully confined a person or restrained a person or removed a person from one place to another; that the person did not consent to this restraint or removal; that the other person restrained or confined or removed that person for the purpose of doing serious bodily injury to that person; that the confinement or restraint or removal was a separate, complete act, independent of and apart from the injury or for the purpose of terrorizing that person; that the person was not released in a safe place or had been seriously injured.

"A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct." *Chandler*, 342 N.C. at 751-52, 467 S.E.2d at 641. Moreover, the alleged confusing portion of the trial court's instruction cannot be considered prejudicial to Defendant in light of the clear, extensive, and repeated instructions the trial court gave on accessory-after-the-fact to burglary and accessory-after-the-fact to first-degree murder. Accordingly, this assignment of error is without merit.

## VI.

[6] In his sixth assignment of error, Defendant argues that the trial court committed plain error by omitting the second element from its substantive instruction on accessory-after-the-fact to first degree murder.

In his brief, however, Defendant concedes that "during the mandate the trial court instructed the jury that the State had the burden of proving the second element i.e. 'the defendant, knowing another person to have committed three counts of first-degree murder knowingly and willfully assisted him in attempting to escape detection, arrest and punishment . . . .'" Assuming the trial court erroneously omitted the second element from the substantive portion of its instructions, "insubstantial technical errors which could not have affected the result will not be held prejudicial." *Chandler*, 342 N.C. at 751-52, 467 S.E.2d at 641 (citations omitted). Therefore, this assignment of error is without merit.

## VII.

[7] In his final assignment of error, Defendant argues that the trial court erred by ordering him to pay restitution. Here again, Defendant made no objection to the trial court's award of restitution, and did not move to amend judgment. Therefore, this issue is not properly before this Court. *See State v. Canady*, 153 N.C. App. 455, 460, 570 S.E.2d 262, 266 (2002) ("Where a defendant fails to object to the judgment or the amount of restitution ordered at the sentencing hearing or to a trial court's order that a defendant make restitution, an appeal concerning the appropriateness of an imposition of restitution is not properly before this Court.") (citations omitted). Nevertheless, this issue has merit, so we reach it pursuant to N.C. R. App. P. 2 to prevent a manifest injustice.

North Carolina's restitution statute authorizes an award of restitution to a crime victim, defined as "a person *directly and proximately* harmed as a result of the defendant's commission of the criminal offense." N.C. Gen. Stat. § 15A-1340.34(a) (2007) (emphasis added). There is a dearth of guidance in North Carolina caselaw regarding an accessory-after-the-fact's liability for restitution on the principal offenses. Therefore, we find helpful guidance in two federal cases cited by the State.

*United States v. Quackenbush*, 9 F. App'x. 264 (4th Cir. 2001) (unpublished), addressed an accessory-after-the-fact's liability for restitution under a nearly identical federal restitution statute. *See* 18 U.S.C.A. § 3663A(a)(2) (2000). In *Quackenbush*, the defendant was convicted of being an accessory-after-the-fact to a bank robbery because he drove the principal offenders to various locations after the robbery and helped them spend the money. *Quackenbush*, 9 F. App'x. at 265. The trial court held the defendant jointly and severally liable with the principal offenders for restitution to the bank. The Fourth Circuit identified the "relevant question" as "whether the victims' losses were proximately caused by the specific conduct for which Quackenbush was convicted, i.e., being an accessory-after-the-fact by virtue of his acts of driving the bank robbers to and from various locations following the bank robbery, harboring them, helping them count and spend the money, and helping them hide from the police." *Id.* at 268. The Fourth Circuit upheld the defendant's liability for restitution, finding that "the district court very well could have found that the bank's inability to recover the stolen money was directly attributable to Quackenbush's act of helping the bank robbers hide after the robbery." *Id.* at 269. There was a direct causal link

between the defendant's actions as an accessory-after-the-fact and the bank's losses.

Similarly, in *United States v. Roach*, 2008 WL 163569 (W.D.N.C. 2008) (unpublished), the District Court found that an accessory-after-the-fact to murder could be liable for restitution to the victim's family. In *Roach*, the defendant shot and killed the victim. Codefendant "Slee" was present at the murder scene, drove the defendant from the murder scene, and later accepted cash and drugs from the defendant as an inducement not to reveal his knowledge of the murder. *Id.* at *1-2. Another codefendant, "Squirrel," disposed of the murder weapon after the defendant told "Squirrel" about the murder. *Id.* The District Court ruled that "Slee" and "Squirrel" could be jointly and severally liable for restitution to the victim's family, as accessories-after-the-fact, because they "deliberately obstructed the murder investigation by authorities and delayed the apprehension of Roach." *Id.* at 6. *Accord State v. Latimer*, 604 N.W.2d 103, 105 (Minn. Ct. App. 1999) (restitution award against accessory-after-the-fact to murder only appropriate for "any losses [the victim's] parents experienced as a result of Latimer's actions to cover up the murder.").

In this case, the only evidence that Defendant attempted to cover up the murders and kidnappings was that he washed the exterior and vacuumed the interior of his car, and attempted to pick up Mr. Brown and Mr. Bell at the motel the day after the murders. However, there was no evidence that these actions actually obstructed the murder investigation, or assisted the principals in evading detection, arrest, or punishment. Moreover, there was contrary evidence tending to show that Defendant ultimately assisted in Mr. Brown's and Mr. Bell's apprehension. Defendant voluntarily went to the police station and gave a statement, although it was several days after his involvement. The cases above make it clear that there must be a direct causal link between an accessory-after-the-fact's actions and the harm to the "victim" defined in the restitution statute; in the case of accessory-after-the-fact to murder, the direct causal link is obstruction of the investigation, or covering up evidence. Defendant's actions after the principal crimes were committed—cleaning the car and making a failed attempt to pick up Mr. Brown and Mr. Bell—did not cover up any evidence or obstruct the investigation. Therefore, there is no "direct and proximate" causal link between Defendant's actions as an accessory-after-the-fact and the harm caused to the victims' families. N.C. Gen. Stat. § 15A-1340.34(a). Accordingly, we vacate the trial court's award of restitution.

IN RE J.D.B.

[196 N.C. App. 234 (2009)]

In sum, we arrest judgment on the accessory-after-the-fact to first-degree kidnapping convictions, remand this matter for resentencing on the three remaining charges of accessory-after-the-fact to first-degree murder, and vacate the award of restitution.

Reversed in part and remanded for resentencing; vacated in part.

Chief Judge MARTIN and Judge STEPHENS concur.