STATE OF NORTH CAROLINA v. JOSEPH MICHAEL GUARASCIO

No. COA09-883

(Filed 20 July 2010)

**1. Criminal Law— joinder of offenses—circumstances not so unique—no error**

The trial court did not err in joining two misdemeanor charges of impersonating a law enforcement officer, five counts of felony forgery, and five more counts of misdemeanor impersonating a law enforcement because the circumstances on each occasion were not so distinct as to render consolidation unjust.

**2. Forgery— no fatal variance in indictment—sufficient evidence**

The trial court did not err in denying defendant's motion to dismiss charges of forgery at the close of the evidence because there was no fatal variance between the indictments on the forgery charges and the proof adduced at trial and there was sufficient evidence of all the elements of forgery.

**3. Crimes, Other— impersonating a law enforcement officer—sufficient evidence**

The trial court did not err by failing to dismiss charges of impersonating a law enforcement officer because the evidence was sufficient to prove each element of the offenses, including that defendant made false representations that he was a police officer.

**4. Criminal Law— jury instructions—impersonating a law enforcement officer—erroneous—harmless error**

The trial court did not commit prejudicial error in its instructions to the jury on the charge of impersonating a law enforcement officer. Although the trial court failed to instruct the jury on the precise statutory ways in which an individual can impersonate a law enforcement officer, the error was harmless, given the substantial evidence that defendant falsely represented to another that he was a sworn law enforcement officer by means described in N.C.G.S. § 14-277(a)(1) and (2).

**5. Forgery— jury instructions—answer to jury question—no error**

The trial court did not err in a forgery case in its response to the jury's question regarding whether an officer could authorize another to sign his name to a citation. The trial court's additional instructions were correct statements of the law and were given in conformity with defendant's assent.

Appeal by Defendant from judgments entered 8 July 2008 by Judge Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 28 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

*Thomas Hicks & Associates, PLLC, by Thomas S. Hicks and Lonnie P. Merritt, for Defendant.*

STEPHENS, Judge.

*I. Procedural History*

On 4 June 2007, Defendant Joseph Michael Guarascio was indicted on five counts of impersonating a law enforcement officer and five counts of forgery of an instrument for alleged offenses occurring on 21 March 2006. On 8 October 2007, Defendant was indicted on two additional counts of impersonating a law enforcement officer for alleged offenses occurring on 20 April 2006.

The charges were joined and the matter came on for trial before a jury at the 30 June 2008 criminal session of New Hanover County Superior Court. On 8 July 2008, the jury returned verdicts of guilty on all charges except one count of impersonating a law enforcement

officer. The trial court entered judgments upon the verdicts imposing suspended sentences and supervised probation. Defendant gave notice of appeal in open court.

## II.  Factual Background

Defendant was a police officer in New York City from 1985 until he retired on disability in 1992. In 2004, Defendant established a private police agency called Interpol Special Police. The State of North Carolina permits private police agencies, whether individually or corporately owned, to employ individuals to exercise law enforcement authority and arrest powers on property where the agencies have contracts for such services, such as apartment complexes and bars. The officers must meet the same minimum standards of training and proficiency as those officers employed by governmental agencies. One of the requirements to maintain certification as a sworn law enforcement officer is firearms qualification.

In January of 2006, Defendant reported to Vickie Huskey, the administrator for company and campus police agencies in the State of North Carolina administered under the Office of the Attorney General, that he had not complied with the firearms qualification in 2005. On 18 January 2006, Ms. Huskey contacted Defendant and told him to cease and desist from acting in any capacity as a law enforcement officer. She instructed him that he had no authority to wear a badge or uniform, carry a service weapon, or exercise any authority as a police officer.

A certified letter from Ms. Husky delivered to Defendant on 30 January 2006 notified him of the suspension of his company police officer commission. Additionally, Defendant was notified in March of 2006 by the Criminal Justice Education Training and Standards Commission[1] that his law enforcement certification was suspended. During the period of suspension, Defendant was legally permitted to run his business administratively, but not permitted to supervise the police officers he employed. Defendant did not regain his law enforcement certification until October of 2006.

On 21 March 2006, Defendant received a telephone call reporting loud noise at the Quad Apartments in Wilmington, North Carolina, which contracted with Interpol for police services. Defendant called Scott Monzon ("Monzon"), the acting Police Chief of Interpol, and

---

1. The North Carolina Criminal Justice Education and Training Standards Commission is established in the Department of Justice and is in charge of an officer's law enforcement certification. *See* 12 N.C. Admin. Code 09A.0101 and 09A.0102 (2007).

notified him of the report. Both Monzon and Defendant arrived at the Quad Apartments and walked up the stairs of the apartment complex together.

A group of approximately ten college-aged friends had gathered at the apartment of William Sconyers-Snow, known as "French," in the Quad Apartments. Those present at French's apartment included Brandon Aber, Steven Ross, Marilyn Faircloth, David Grantham, Michael Collins, Matt Collins, Neve McIntosh, and Joseph Blackshirt. Brandon Aber testified that they were playing loud music and drinking beer after midnight when they heard a knock on the door. French went to the door and said that he did not have to let anyone in. However, either Defendant or Monzon told French that he had to open the door or they would break it down.

When French opened the door, Defendant and Monzon walked into the apartment. Monzon was wearing a uniform and Defendant was in plain clothes. French recalled seeing a badge on Defendant's leather jacket, although none of the others recalled seeing one. Defendant and Monzon demanded identification from everyone in the apartment and began writing citations for underage drinking for those individuals who were not yet 21.

Monzon asked Defendant to help fill out the citations. Monzon testified that he expected Defendant to give the ticket book back to him so that he could sign the citations. Instead, Defendant signed Monzon's name to the citations for David Grantham, Brandon Aber, Marilyn Faircloth, Michael Collins, and Steven Ross. Monzon did not give Defendant permission to sign his name to the citations and confronted Defendant about his actions when the two were alone. Monzon told Defendant not to sign his name to charging citations or arrest warrants.

Defendant called French's father, Jerry Snow, sometime between 2:00 a.m. and 3:00 a.m. on 21 March 2006 and identified himself as Officer Joe Guarascio. He informed Mr. Snow that although his son had not learned his lesson, Defendant was not going to charge French at this time and was going to let him go. Based on Defendant's representations, Mr. Snow understood that Defendant was a law enforcement officer.

Steven Ross testified that Defendant identified himself as "the law" or a "police officer." At one point during the incident, Defendant took French outside in handcuffs. Defendant threatened to arrest

French for marijuana residue that Defendant had confiscated in a prior visit to French's apartment.

On 20 April 2006, roommates Bryanna Fazio ("Fazio") and Jessica Siragusa ("Siragusa") accompanied some friends to a downtown Wilmington club. Both women were 20 years old and used fake identifications to get into the club. Once inside, they were approached by Defendant, who asked to see their identification. Defendant identified himself as "the police" and showed them his badge. Defendant was dressed in plain clothes. Monzon was present as well.

Defendant told Fazio that he didn't believe the identification she gave him was hers and asked Fazio and Siragusa to step outside. Defendant searched Fazio's purse without her consent and found her real identification. Defendant threatened to arrest Fazio and have her expelled from school. Fazio was handcuffed and placed in Defendant's car.

After Fazio spent about 15 minutes in Defendant's car, Monzon removed the handcuffs from her wrists and told Fazio that she would not be arrested. Using Fazio's cell phone, Defendant called Fazio's aunt, Susan Chambers ("Chambers"), in New York at approximately 2:00 a.m. Defendant identified himself as Chief Guarascio with the Wilmington Police Department. Defendant told Chambers that he had detained Fazio for underage drinking, that he was going to have her expelled from school, that he was also from New York, and that things weren't the same in North Carolina as they were in New York. Defendant threatened to take Fazio before a judge and have her spend the night in jail.

Defendant told Siragusa that she was a disgrace to her father and that she was going to get expelled from school. Defendant filled out her citation and took it to Monzon to be signed. Using Siragusa's cell phone, Defendant telephoned Siragusa's father, Steve Siragusa, in New York at approximately 2:00 a.m. Defendant identified himself as "an officer with Wilmington" and said that he had detained Siragusa for underage drinking. Defendant warned Mr. Siragusa that the school Siragusa attended would expel her if Defendant told them about her underage drinking.

### III. Discussion

### A. Joinder

[1] By Defendant's first argument, Defendant contends that the trial court erred in joining the two misdemeanor charges of impersonating

a law enforcement officer resulting from events which occurred on 20 April 2006 with the five counts of felony forgery and five counts of misdemeanor impersonating a law enforcement officer resulting from events that occurred on 21 March 2006. We disagree.

Joinder is governed by N.C. Gen. Stat. § 15A-926 which provides that "[t]wo or more offenses may be joined . . . for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2007). In determining whether two or more offenses may be joined for trial, the test is "whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant." *State v. Fultz*, 92 N.C. App. 80, 83, 373 S.E.2d 445, 447 (1988) (citation and quotation omitted). "[T]he determination of whether a group of offenses are transactionally related so that they may be joined for trial is a question of law fully reviewable on appeal." *State v. Williams*, 74 N.C. App. 695, 696-97, 329 S.E.2d 705, 707 (1985). "Public policy strongly favors joinder because it expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden on citizens who must sacrifice both time and money to serve on juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *State v. Jenkins*, 83 N.C. App. 616, 351 S.E.2d 299 (1986), *cert. denied*, 319 N.C. 675, 356 S.E.2d 791 (1987). "When joinder is permissible under the statute, whether to allow joinder is a determination within the discretion of the trial judge, whose ruling will not be disturbed on appeal unless it is demonstrated that joinder deprived the defendant of a fair trial." *State v. Ruffin*, 90 N.C. App. 712, 370 S.E.2d 279 (1988).

In the present case, the joined offenses occurred on 21 March and 20 April 2006, approximately one month apart. Furthermore, on both occasions, Defendant comported himself as a law enforcement officer by interrogating individuals and writing out citations for underage drinking, notified the minors' parents or family members that they were in his custody for underage drinking, and identified himself as a law enforcement officer to the parents and family members. These actions evidence a scheme or plan in which Defendant, despite verbal and written cease and desist notices that his certifications were suspended, acted under the guise of apparent authority as a law enforcement officer to interrogate, belittle, and intimidate minors. *See, e.g.*, *Fultz*, 92 N.C. App. at 83, 373 S.E.2d at 447 ("[T]he evidence demon-

strates a scheme or plan in which the defendant used his position as troop leader to commit these acts."). We conclude that the circumstances on each occasion are not so distinct as to render consolidation unjust. On the contrary, the circumstances are strikingly similar. Accordingly, the trial court did not err in joining the offenses.

Moreover, assuming *arguendo* that the trial court erred in allowing joinder here, Defendant has failed to show prejudice. Defendant argues that "[b]y joining the issues in these cases . . . [Defendant] was unjustly portrayed to the jury as an outlaw and a villain." However, Defendant has offered no evidence tending to show that he was unable to present his defense because of the joinder.

The assignments of error upon which Defendant's argument is based are overruled.

### B. Motion to Dismiss

[2] Defendant next argues that the trial court erred in denying his motion to dismiss the charges of forgery at the close of the evidence. Specifically, Defendant contends that there is a fatal variance between the indictments on the forgery charges and the proof adduced at trial and that there was insufficient evidence of all the elements of forgery. We disagree.

On appeal of a trial court's denial of a motion to dismiss for insufficient evidence, this Court considers "whether substantial evidence exists as to each essential element of the offense charged and of the defendant being the perpetrator of that offense." *State v. Glover*, 156 N.C. App. 139, 142, 575 S.E.2d 835, 837 (2003). " 'The existence of substantial evidence is a question of law for the trial court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Barden*, 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003)). In determining the existence of substantial evidence, "the trial court must consider the evidence in the light most favorable to the State, with the State entitled to every reasonable inference to be drawn therefrom, and discrepancies and contradictions resolved in favor of the State." *State v. Tirado*, 358 N.C. 551, 594, 599 S.E.2d 515, 543-44 (2004) (citation and quotation marks omitted), *cert. denied*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). Thus, "[a] case should be submitted to a jury if there is any evidence tending to prove the fact in issue or reasonably leading to the jury's conclusion as a fairly logical and legitimate deduction."

*State v. Harris*, 361 N.C. 400, 402-03, 646 S.E.2d 526, 528 (2007) (citations and internal quotation marks omitted).

Defendant first argues that there is a fatal variance between the indictments on the forgery charges and the proof adduced at trial.

A motion to dismiss [for a variance] is in order when the prosecution fails to offer sufficient evidence the defendant committed the offense charged. A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged.

*State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). In order to prevail on such a motion, the defendant must show a variance regarding an essential element of the offense. *State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997).

N.C. Gen. Stat. § 14-119 makes it "unlawful for any person to forge . . . any instrument . . . with the intent to injure or defraud any person, financial institution, or governmental unit." N.C. Gen. Stat. § 14-119(a) (2007). An "instrument" is "any currency, bill, note, warrant, check, *order*, or similar instrument of or on any financial institution or governmental unit, or any cashier or officer of the institution or unit[.]" N.C. Gen. Stat. § 14-119(c)(4) (2007) (emphasis added). " 'Governmental unit' means . . . *any state* of the United States, any political subdivision, agency, or instrumentality of any state, or any foreign jurisdiction." N.C. Gen. Stat. § 14-119(c)(3) (2007) (emphasis added).

In each count of forgery, Defendant was charged with the offense of forgery of "an order drawn on a government unit, STATE OF NORTH CAROLINA, which is described as follows: NORTH CAROLINA UNIFORM CITATION" in violation of N.C. Gen. Stat. § 14-119.

Defendant contends that a "citation" is not "an order[.]" Defendant's argument fails. A citation is "[a] police-issued *order* to appear before a judge on a given date to defend against a stated charge . . . ." *Black's Law Dictionary* 277 (9th ed. 2009) (emphasis added); *see* N.C. Gen. Stat. § 15A-302 (2007) ("A citation is a *directive*, issued by a law enforcement officer or other person authorized by statute, that a person appear in court and answer a misdemeanor or infraction charge or charges." (emphasis added)). Defendant further argues that the citation is not "drawn on a government unit" as Interpol is not a government unit. We disagree. Interpol is a private police agency with "law enforcement authority and arrest powers"

and is authorized by statute to issue North Carolina Uniform Citations. N.C. Gen. Stat. § 74E-6(c) (2007).

At trial, the State offered evidence that Defendant wrote David Grantham, Brandon Aber, Marilyn Faircloth, Michael Collins, and Steven Ross North Carolina Uniform Citations, signing Monzon's name to the citations. Accordingly, we conclude there was no variance, much less a fatal variance, between the allegations contained in the indictments for forgery and the evidence adduced at trial. Defendant's argument is wholly without merit.

Defendant also argues that there was insufficient evidence of all the elements of forgery and, therefore, the trial court erred in submitting the forgery charges to the jury. Again, we disagree. "To send a charge of forgery to the jury, the State must offer sufficient evidence of (1) a false making of some instrument in writing; (2) a fraudulent intent; and (3) the instrument must apparently [be] capable of effecting fraud." *State v. Seraphem*, 90 N.C. App. 368, 373, 368 S.E.2d 643, 646 (1988).

In this case, the evidence is uncontradicted that Defendant signed Monzon's name on five North Carolina Uniform Citations. As discussed *supra*, these citations are "instruments" within the meaning of N.C. Gen. Stat. § 14-119. Furthermore, it is uncontested that Defendant intended that his signature be received as Monzon's and that Monzon's signature made the citations valid and effectual. *See Peoples Bank & Trust Co. v. Fidelity & Casualty Co.*, 231 N.C. 510, 519, 57 S.E.2d 809, 814 (1950) ("[T]he falsity of the paper consists in the falseness of its purported authority, the fraudulent intent that the signature shall pass or be received as the genuine *act* of the person whose signing, only, could make the paper valid and effectual."). Moreover, taken in the light most favorable to the State, the evidence indicates that Defendant did not have Monzon's authority to sign the instruments on Monzon's behalf. Monzon testified that he asked Defendant to help him fill out the citations on 21 March 2006. Defendant filled out the required information on the citations and then signed Monzon's name to them. When Monzon received the completed citations from Defendant, Monzon was upset that Defendant had signed Monzon's name to them. After they left the apartment, Monzon told Defendant, " 'You don't need to be signing my name[.]' " Accordingly, as the State presented sufficient evidence of the elements of forgery, the trial court did not err in denying Defendant's motion to dismiss the forgery charges for insufficient evidence.

The assignments of error upon which Defendant's argument is based are overruled.

### C. Motion to Dismiss Charges of Impersonating a Law Enforcement Officer

[3] Defendant next argues that the trial court erred in failing to dismiss the charges of impersonating a law enforcement officer because the evidence was insufficient to prove each element of this offense. Specifically, Defendant contends that there was insufficient evidence that Defendant made a false representation that he was a police officer. We disagree.

As charged in this case, the offense of impersonating a law enforcement officer consists of two material elements: (1) defendant must have made a false representation that he is a duly authorized peace officer; and (2) acting upon such representation, defendant must have arrested some person, searched a building, or done some act in accordance with the authority delegated to duly authorized officers. *State v. Church*, 242 N.C. 230, 232, 87 S.E.2d 256, 257 (1955).

Pursuant to N.C. Gen. Stat. § 14-277, a person makes a false representation that he is a sworn law enforcement officer if he:

(1) Verbally informs another that he is a sworn law[]enforcement officer, whether or not the representation refers to a particular agency;

(2) Displays any badge or identification signifying to a reasonable individual that the person is a sworn law[]enforcement officer, whether or not the badge or other identification refers to a particular law[]enforcement agency;

(3) Unlawfully operates a vehicle on a public street, highway or public vehicular area with an operating red light as defined in G.S. 20-130.1(a); or

(4) Unlawfully operates a vehicle on a public street, highway, or public vehicular area with an operating blue light as defined in G.S. 20-130.1(c).

N.C. Gen. Stat. § 14-277(a) (2007).

In this case, French testified that Defendant "had on a leather jacket and he had on a badge on his leather jacket on his belt" when he came into French's apartment. French also testified that Defendant identified himself to French's father as "Officer Joe Guarascio[.]"

Mr. Snow testified that Defendant identified himself as an officer. Steven Ross testified that he recalled Defendant saying, " 'I'm the law, police officer,' something like that."

Monzon testified that on 20 April 2006, Defendant approached the two females who were sitting at the bar and asked to see their identification. When they asked, " 'Well, who are you?[,]' " Defendant replied, " 'I'm the police[,]' and showed them his badge."[2]

Especially when viewed in the light most favorable to the State, as it must be, *Tirado*, 358 N.C. at 594, 599 S.E.2d at 544, this evidence is sufficient to show that Defendant made false representations that he was a sworn law enforcement officer, within the meaning of N.C. Gen. Stat. § 14-277, on 21 March and 20 April 2006. The assignment of error upon which this argument is based is overruled.

### D.  Jury Instruction

[4] Next, Defendant argues that the trial court erred in its instructions to the jury on the charge of impersonating a law enforcement officer. Specifically, Defendant argues that the trial court was required to instruct the jury on the precise statutory ways in which an individual can impersonate a law enforcement officer. While we agree that the challenged jury instructions were erroneous, we conclude that the error was harmless.

"When instructing the jury, the trial court has the duty to declare and explain the law arising on the evidence." *State v. Corn*, 307 N.C. 79, 86, 296 S.E.2d 261, 266 (1982) (citations and quotation marks omitted). However, "the trial court's omission of elements of a crime in its recitation of jury instructions is reviewed under the harmless error test." *State v. Bunch*, 363 N.C. 841, 845, 689 S.E.2d 866, 869 (2010). "On a general level, '[a]n error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction.' " *Id.* (quoting *State v. Nelson*, 341 N.C. 695, 701, 462 S.E.2d 225, 228 (1995)).

Pursuant to N.C. Gen. Stat. § 14-277,

(a) No person shall falsely represent to another that he is a sworn law[]enforcement officer. As used in this section, a person represents that he is a sworn law[]enforcement officer if he:

---

2. Although Defendant argues that "neither of the two young ladies testified that [Defendant] either displayed a badge or represented himself to be a law enforcement officer[,]" Monzon's testimony is sufficient evidence of a false representation.

(1) Verbally informs another that he is a sworn law[]enforcement officer, whether or not the representation refers to a particular agency;

(2) Displays any badge or identification signifying to a reasonable individual that the person is a sworn law[]enforcement officer, whether or not the badge or other identification refers to a particular law[]enforcement agency;

(3) Unlawfully operates a vehicle on a public street, highway or public vehicular area with an operating red light as defined in G.S. 20-130.1(a); or

(4) Unlawfully operates a vehicle on a public street, highway, or public vehicular area with an operating blue light as defined in G.S. 20-130.1(c).

(b) No person shall, while falsely representing to another that he is a sworn law[]enforcement officer, carry out any act in accordance with the authority granted to a law[]enforcement officer. For purposes of this section, an act in accordance with the authority granted to a law[]enforcement officer includes:

(1) Ordering any person to remain at or leave from a particular place or area;

(2) Detaining or arresting any person;

(3) Searching any vehicle, building, or premises, whether public or private, with or without a search warrant or administrative inspection warrant;

(4) Unlawfully operating a vehicle on a public street or highway or public vehicular area equipped with an operating red light or siren in such a manner as to cause a reasonable person to yield the right-of-way or to stop his vehicle in obedience to such red light or siren;

(5) Unlawfully operating a vehicle on a public street or highway or public vehicular area equipped with an operating blue light in such a manner as to cause a reasonable person to yield the right-of-way or to stop his vehicle in obedience to such blue light.

N.C. Gen. Stat. § 14-277 (2007).

While N.C. Gen. Stat. § 14-277(a) makes it a criminal offense for an individual to make a false representation to another person that he

is a sworn law enforcement officer, N.C. Gen. Stat. § 14-277(b) "makes it a criminal offense for an individual, *while falsely representing to another that he is a sworn law[]enforcement officer*, to carry out any act in accordance with the authority granted to a law[]enforcement officer." *State v. Chisholm*, 90 N.C. App. 526, 530, 369 S.E.2d 375, 377 (1988). Accordingly, a charge under N.C. Gen. Stat. § 14-277(b) *necessarily* includes all of the elements of a charge under N.C. Gen. Stat. § 14-277(a).

N.C. Gen. Stat. § 14-277(a), which codifies the offense of "impersonating a law[]enforcement officer," lists the four ways by which an individual may falsely represent to another that he is a sworn law enforcement officer. *See* N.C. Gen. Stat. § 14-277(a)(1)-(4). Furthermore, North Carolina Pattern Jury Instruction 230.70 states:

> For you to find the defendant guilty of [impersonating a law enforcement officer], the State must prove two things beyond a reasonable doubt.
>
> First, that the defendant made a false representation to another person that he was a sworn law[]enforcement officer.
>
> And second, that the defendant made this false representation by
>
> a. [verbally informing another that he is a sworn law enforcement officer] (footnote omitted);
>
> b. [displays any badge or identification signifying to a reasonable individual that the person is a sworn law[]enforcement officer] (footnote omitted);
>
> c. [unlawfully operates a vehicle on a [public street] [highway] [public vehicular area] with an operating red light (as defined in G.S. 20-130.1(a))] (footnote omitted); or
>
> d. [unlawfully operates a vehicle on a [public street] [highway] [public vehicular area] with an operating blue light (as defined in G.S. 20-130.1(c))] (footnote omitted).

N.C.P.I.—Crim. 230-70. This pattern jury instruction correctly guides the trial court in charging a jury on the law contained in N.C. Gen. Stat. § 14-277(a).

N.C. Gen. Stat. § 14-277(b), which codifies the offense of "impersonating a law[]enforcement officer and carrying out an act in accordance with the authority granted to a law[]enforcement officer," and,

as stated *supra,* includes the elements of N.C. Gen. Stat. § 14-277(a), lists the four ways by which an individual may carry out an act in accordance with the authority granted to a law enforcement officer. *See* N.C. Gen. Stat. § 14-277(b)(1)-(4). However, North Carolina Pattern Jury Instruction 230.75 states:

> For you to find the defendant guilty of [impersonating a law enforcement officer and carrying out an act in accordance with the authority granted to a law[]enforcement officer], the State must prove two things beyond a reasonable doubt.
>
> First, that the defendant falsely represented to another that he was a sworn law[]enforcement officer.
>
> And Second, that the defendant, while making this false representation, carried out an act in accordance with the authority granted to a law[]enforcement officer by
>
> a. [ordering any person to remain at or leave from a particular place or area];
>
> b. [detaining or arresting any person];
>
> c. [searching any vehicle, building, or premises, whether public or private, with or without a search warrant or administrative inspection warrant];
>
> d. [unlawfully operating a vehicle on a [public street] [highway] [public vehicular area] equipped with an operating red light or siren in such a manner as to cause a reasonable person to yield the right-of-way or to stop his vehicle in obedience to such red light or siren] (footnote omitted);
>
> e. [unlawfully operating a vehicle on a [public street] [highway] [public vehicular area] equipped with an operating blue light in such a manner as to cause a reasonable person to yield the right-of-way or to stop his vehicle in obedience to such blue light] (footnote omitted).

N.C.P.I.—Crim. 230.75. This instruction inadequately guides the trial court regarding the elements of "impersonating a law[]enforcement officer and carrying out an act in accordance with the authority granted to a law[]enforcement officer" by omitting from the instruction the ways enumerated in N.C. Gen. Stat. § 14-277(a)(1)-(4) and N.C.P.I.—Crim. 230-70 by which an individual may falsely represent to another that he is a sworn law enforcement officer.

In this case, the trial court instructed the jury that "Defendant has been charged with . . . impersonating a law enforcement officer and carrying out an act in accordance with the authority granted to a law enforcement officer . . . ." The trial court then instructed the jury:

> For you to find the Defendant guilty of this offense, the State must prove two things beyond a reasonable doubt.
>
> First, that the Defendant falsely represented to another that he was a law enforcement officer.
>
> And second, that the Defendant, while making this false representation, carried out an act in accordance with the authority granted to a law enforcement officer by ordering any person to remain at or leave from a particular place or area or detaining or arresting a person.

As the trial court's jury instruction for "impersonating a law[]enforcement officer and carrying out an act in accordance with the authority granted to a law[]enforcement officer" omitted from the instruction the ways by which an individual may falsely represent to another that he is a sworn law enforcement officer, the trial court's instruction was insufficient to correctly charge the jury on the necessary elements of the offense.

Evidence was presented that Defendant verbally informed individuals that he was a sworn law enforcement officer and displayed a badge. Accordingly, the trial court's instruction for "impersonating a law[]enforcement officer and carrying out an act in accordance with the authority granted to a law[]enforcement officer" should have been as follows:

> For you to find Defendant guilty of this offense, the State must prove two things beyond a reasonable doubt.
>
> First, that the Defendant falsely represented to another that he was a sworn law enforcement officer *by verbally informing another that he was a sworn law enforcement officer or displaying any badge or identification signifying to a reasonable individual that the person is a sworn law enforcement officer.*
>
> And second, that the Defendant, while making this false representation, carried out an act in accordance with the authority granted to a law enforcement officer by ordering any person to remain at or leave from a particular place or area or detaining or arresting any person.

(Emphasis added). This instruction would have adequately "declare[d] and explain[ed] the law arising on the evidence." *Corn*, 307 N.C. at 86, 296 S.E.2d at 266 (citations and quotation marks omitted).

However, even though we conclude that the trial court's instruction was erroneous, we also conclude that the error was harmless. As explained *supra*, French testified that Defendant "had on a leather jacket and he had on a badge on his leather jacket on his belt" when he came into French's apartment. French also testified that Defendant identified himself to French's father as "Officer Joe Guarascio[.]" Mr. Snow testified that Defendant identified himself as an officer. Steven Ross testified that he recalled Defendant saying, " 'I'm the law, police officer,' something like that."

Monzon testified that on 20 April 2006, Defendant approached the two females who were sitting at the bar and asked to see their identification. When they asked, "'Well, who are you?[,]' " Defendant replied, " 'I'm the police[,]' and showed them his badge."

Given this substantial evidence that Defendant falsely represented to another that he was a sworn law enforcement officer by means described in N.C. Gen. Stat. § 14-277(a)(1) and (2), we conclude that the trial court's instructional error did not contribute to Defendant's conviction and, thus, was harmless beyond a reasonable doubt. *Nelson*, 341 N.C. at 701, 462 S.E.2d at 228. Defendant's argument is overruled.

### E. Jury Request

[5] By Defendant's final argument, he contends that the trial court erred in its response to the jury's question regarding whether an officer could authorize another to sign his name to a citation. We disagree.

"After the jury retires for deliberation, the judge may give appropriate additional instructions to . . . [r]espond to an inquiry of the jury made in open court . . . ." N.C. Gen. Stat. § 15A-1234 (a)(1) (2007). "[T]he trial court is in the best position to determine whether further additional instruction will aid or confuse the jury in its deliberations, or if further instruction will prevent or cause in itself an undue emphasis being placed on a particular portion of the court's instructions." *State v. Prevette*, 317 N.C. 148, 164, 345 S.E.2d 159, 169 (1986). Thus, a trial court's decision to grant or deny the jury's request for additional instruction is reviewed by this Court only for an abuse of

discretion. *See id.* (holding that the trial court did not abuse its discretion in refusing to reinstruct the jury on second-degree murder pursuant to defendant's request).

In this case, after the jury retired for deliberations, the jury sent a question to the court that read:

"Could Officer Monzon direct [Defendant] to sign B.S. Monzon? Is that a legal request to produce a legal citation? Is authority referencing a legal standard [(] that allows him to sign, [)] or verbal authority by Monzon to sign?"

The following exchange occurred between counsel and the trial court regarding the question:

THE COURT: . . . My intention is just to direct them that all the evidence has been presented and that it is their duty to remember the evidence, whether called to their attention or not. . . .

[DEFENSE COUNSEL]: I'm not sure—I'm not sure what the question asks.

THE COURT: I'm not either.

[THE STATE]: I'm not either. I'm not—I'm not sure if they're asking—well, I don't know, Judge. I don't think you can answer. I think they're basically asking about whether verbal authority is okay, whether written authority is okay and then whether any of those authorities even if they're given by Monzon is okay.

THE COURT: Uh-huh.

[THE STATE]: And I'm not sure you can answer that for them.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: I would ask that the Court instruct [the jury] that any person can authorize almost any person to sign their signature to a document.

THE COURT: I can't—how—how on Earth can I—

[DEFENSE COUNSEL]: Because I think that's the case.

THE COURT: —instruct the jury to do that?

[DEFENSE COUNSEL]: Well, I'm just asking.

THE COURT: Okay.

[DEFENSE COUNSEL]: You know, if they're asking, you know, whether—you see the problem we have is we don't know what they're asking.

THE COURT: Yeah.

[DEFENSE COUNSEL]: I think what they're getting at is, what—what is authorization and how does authorization have to be expressed?

. . . .

[DEFENSE COUNSEL]: And I think that there can be an instruction. I can probably given some time to do some additional research craft, but I think at this point I don't know that it needs to be responded [to]. You've heard the evidence. I've instructed you on the law, you know, it's up to you to make a determination.

THE COURT: All right. This is what I intend to instruct to the jury . . . .

The trial court ultimately instructed the jury as follows:

Now, members of the jury, all of the evidence had [sic] been presented. It is your duty to decide from the evidence what the facts are. You must apply the law as I have given it to you to the facts—to those facts. You have heard the evidence and the arguments of counsel. If your recollection of the evidence differs from that of the prosecuting attorney or of the defense attorney, you rely solely upon your recollection.

Your duty is to remember the evidence whether called to your attention or not. You should consider all the evidence, arguments, contentions, and positions urged by the attorneys, and other contention[s] that arise from the evidence and using your common sense you must determine the truth in this case.

After sending the jury back to the jury room to continue its deliberations, the trial court asked counsel for the State and Defendant if they had "[a]nything . . . as it regards those instructions?" Counsel for both parties indicated that they did not.

Defendant now argues that "[t]he question posed, whether the individual whose name is written upon the instrument can give authorization to another to sign his name, addresses the penultimate defense to the offense charged." However, it was readily apparent at trial that neither the parties nor the trial judge could discern exactly

"[t]he question posed[.]" Furthermore, the trial court's additional instructions were correct statements of the law and were given in conformity with Defendant's assent. *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). "The [D]efendant will not be heard to complain on appeal when the trial court has instructed adequately on the law and in a manner requested by the [D]efendant." *Id.* Accordingly, we find no abuse of discretion in the trial court's response to the jury's question. The assignment of error upon which Defendant's argument is based in overruled.

Defendant received a fair trial, free of prejudicial error.

NO PREJUDICIAL ERROR.

Judges CALABRIA and GEER concur.