INMAN, Judge.
 

 *327
 
 A person who, while carrying a loaded firearm, starts a physical fight and discharges the firearm injuring another person, is not entitled to a jury instruction on the defense of accident.
 

 Dwayne Robinson ("Defendant") appeals from the judgments entered upon his convictions for attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and a sentencing enhancement for the assault charge based on the fact that Defendant was wearing or had in his immediate possession a bulletproof vest at the time of the assault. On appeal, Defendant first argues that the trial court committed plain error by failing to instruct the jury on the defense of accident. Additionally, Defendant argues that the trial court committed plain error in its instructions to the jury regarding the bulletproof vest. After
 
 *138
 
 careful review, we conclude that Defendant has failed to demonstrate plain error.
 

 Factual and Procedural Background
 

 Evidence presented at trial included the following:
 

 On 23 August 2013, at approximately 10:30 p.m., Jacksonville Police Department officers were dispatched in response to a 911 call reporting shots fired near 600 Hammock Lane. Officers approaching the apartments in marked police cruisers from different directions observed a sports utility vehicle recklessly speeding away from the area. The
 
 *328
 
 officers converged on the vehicle, drew their weapons, and ordered the vehicle's occupants to step out.
 

 Latasha Sutton ("Ms. Sutton") was in the driver's seat. Justin Johnson ("Johnson"), Ms. Sutton's boyfriend, was in the front passenger seat. In the back seat, police found Defendant. Ms. Sutton's two young children were also in the vehicle. After removing all the occupants from the vehicle, officers detected the odor of gunpowder. Crime scene investigators then arrived and searched the vehicle. They found loaded handguns, handcuffs, ammunition, rope, gloves, a knife in its sheath, and bulletproof vests. Ms. Sutton told officers, "[n]one of this would have happened if you would have done your job yesterday." One of the officers had responded to a domestic disturbance at the same address a day earlier and had seen Johnson, Ms. Sutton, and Ms. Sutton's estranged husband, Anthony Sutton ("Mr. Sutton"). The Suttons were fighting over custody of their children.
 

 After stopping the vehicle in which Defendant was riding, officers searched the area outside the call address and found Mr. Sutton lying on the sidewalk, handcuffed and bleeding from gunshot wounds. Officer Lonnie Horton observed that Mr. Sutton had been shot once in the back of his left leg, just behind his knee, and once in the front of his right thigh. Mr. Sutton was taken to the hospital and treated for his injuries.
 

 Defendant testified at trial as follows: Defendant had never met Mr. Sutton or Ms. Sutton and had no knowledge of the Suttons' child custody dispute prior to the shooting that resulted in his arrest. Johnson lived in Fayetteville and Defendant lived right outside of Fayetteville. They had become friends years earlier when both were deployed in Iraq by the United States Army. Defendant telephoned Johnson on 23 August 2013 to invite him to a Fayetteville restaurant to celebrate Defendant's graduation from an Army leadership school. When Defendant arrived at Johnson's apartment at 6:00 p.m., Johnson asked Defendant to ride with him to pick up Johnson's girlfriend, Ms. Sutton, and to take her to pick up her children. Defendant assumed the children were in Fayetteville. After Johnson and Defendant picked up Ms. Sutton, Defendant fell asleep in the back of Johnson's vehicle. When he awoke, the vehicle was parked at an apartment complex in Jacksonville. Defendant exited the vehicle to stretch his legs and walked about 50 yards toward a nearby road.
 

 Defendant testified that as he was walking back toward Johnson's vehicle, he was almost hit by an SUV that entered the parking lot. The SUV driver, Mr. Sutton, parked and started walking in Defendant's direction. Defendant confronted Mr. Sutton about nearly hitting him, but Mr.
 
 *329
 
 Sutton said nothing and continued walking past him. Defendant then grabbed Mr. Sutton by the back of his shirt, pulled and shoved him down on the asphalt, and cursed at him. When Mr. Sutton stood up, Defendant hit him in the head. Defendant and Mr. Sutton then began wrestling and fighting in the parking lot. Defendant had a loaded .40 caliber gun in the waistband of his pants, for which he had a concealed carry permit. During the fight, Mr. Sutton pulled Defendant down to the ground. When Defendant stood up, his gun came loose, slid down his pants leg, and was caught in his shoe. As Defendant tried to retrieve the gun, Mr. Sutton grabbed for it as well, and the two continued to wrestle and fight for the gun. Mr. Sutton had one hand on the barrel of the gun and the other hand on Defendant's wrist. Defendant's finger was on the trigger of the gun. Defendant hit Mr. Sutton's hand off of the barrel, and the gun went off.
 

 Defendant testified that after the gun discharged, the two men continued to wrestle in the rough grass behind Mr. Sutton's apartment building. The gun discharged again.
 

 *139
 
 Mr. Sutton then pulled away from the fight, and the gun discharged a third time. After the third shot, the gun was out of both Defendant's and Mr. Sutton's hands, and Defendant put Mr. Sutton into a chokehold to stop him from fighting. Johnson then called out to Defendant, and Defendant told Johnson they were in the yard behind the apartment. Johnson tackled Mr. Sutton and attempted to handcuff him, but Johnson was unable to handcuff both hands. Defendant and Johnson then ran away. Defendant denied pointing the gun at Mr. Sutton at any time that night. Defendant also denied wearing a bulletproof vest.
 

 Mr. Sutton testified at trial as follows: He had just parked his car outside his apartment after 9:00 p.m. on 23 August 2013 and was standing in the parking lot and using his phone when he noticed a man wearing a bulletproof vest and gloves walking in his direction. Mr. Sutton thought it was odd that the man was wearing gloves because the weather was hot. He was not concerned about the vest because he was familiar with military service members exercising while wearing vests. When Mr. Sutton next looked up from his phone, the man was holding a gun to his face. Mr. Sutton struck the man in the face and ran, then heard a loud sound and his leg went numb, and he knew he had been shot. Mr. Sutton tried to continue running but fell. The man leaned over him and said, "do you want to die?" Mr. Sutton told the man that "he wasn't going to kill [any]body." Mr. Sutton heard the gun discharge a second time and believed he had been shot in the head. Mr. Sutton fought with the man for control of the gun, which resulted in the two men wrestling. While Mr. Sutton and the man were wrestling, another man approached
 
 *330
 
 and tried to handcuff Mr. Sutton's hands together. Johnson also went through Mr. Sutton's pockets, grabbed Mr. Sutton's keys, and ran away. Mr. Sutton eventually let go of the gun, tried to run towards the building, and then heard a third gunshot.
 

 Lawrence Herndon, a neighbor of Mr. Sutton's, testified that he was in his apartment that evening and looked out of his front window after he heard a "pop noise." He did not see anyone outside. Upon hearing a second "pop," Herndon looked out of his back window and saw Mr. Sutton on the ground and two people struggling with him. Of the two men fighting with Mr. Sutton, the taller man had a gun and was wearing a bulletproof vest. After seeing the taller man pointing a gun at Mr. Sutton's throat and hearing someone say the word "kill," Herndon told his wife to call 911. Herndon later identified Defendant and Johnson as the two men fighting with Mr. Sutton, and specifically identified Defendant as the man with the gun and bulletproof vest.
 

 Defendant was indicted on charges of attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, first degree kidnapping, felony conspiracy, and wearing a bulletproof vest during the commission of those crimes. On 9 November 2015, Defendant's case was called for trial in Onslow County Superior Court. The State declined to proceed on the kidnapping and a related conspiracy charge.
 

 On 17 November 2015, the jury found Defendant guilty of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury, and found that Defendant wore or had in his immediate possession a bulletproof vest at the time of the felony. The jury found Defendant not guilty of conspiracy to commit first degree murder, conspiracy to commit assault with a deadly weapon with intent to kill inflicting serious injury, and conspiracy to commit assault with a deadly weapon inflicting serious injury. Defendant was sentenced to a minimum term of 192 months to a maximum term of 243 months for the attempted first degree murder charge and a minimum term of 157 months to a maximum term of 201 months for the assault with a deadly weapon with intent to kill inflicting serious injury charge, applying the bulletproof vest enhancement. Defendant appeals his convictions.
 

 Analysis
 

 I.
 
 Jury Instruction Regarding Defense of Accident
 

 Defendant argues that the trial court erred by failing to instruct the jury on the defense of accident because Defendant testified that
 
 *140
 
 his gun
 
 *331
 
 discharged accidentally during the fight with Mr. Sutton. We hold that the trial court did not err in omitting the instruction and that, even if the trial court had instructed the jury regarding the defense of accident, it is not probable that jurors would have reached a different verdict.
 

 Defendant's counsel did not request an instruction regarding the theory of accident. We therefore review for plain error.
 
 State v. Gregory
 
 ,
 
 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996). To show plain error, Defendant must establish "not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993). To prevail on appeal from the trial court's failure to instruct jurors on a defense, a defendant "must show that the requested instruction was not given in substance, and that substantial evidence supported the omitted instruction."
 
 State v. White
 
 ,
 
 77 N.C.App. 45
 
 , 52,
 
 334 S.E.2d 786
 
 , 792 (1985) (citations omitted). "The trial court need only give the jury instructions supported by a reasonable view of the evidence."
 
 Id.
 
 at 52,
 
 334 S.E.2d at 792
 
 (citation omitted).
 

 Although this Court usually considers the evidence in a light most favorable to the State when reviewing a criminal defendant's assignment of error, the standard is the opposite with respect to the omission of an instruction regarding a defense. "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant."
 
 State v. Mash
 
 ,
 
 323 N.C. 339
 
 , 348,
 
 372 S.E.2d 532
 
 , 537 (1988) (citations omitted).
 

 The State argues that Defendant was not entitled to an instruction on the defense of accident because Defendant admitted that he started the fight with Mr. Sutton prior to the shooting. "The law is clear that 'evidence does not raise the defense of accident where the defendant was not engaged in lawful conduct when [a shooting] occurred.' "
 
 State v. Gattis
 
 ,
 
 166 N.C.App. 1
 
 , 11,
 
 601 S.E.2d 205
 
 , 211 (2004) (quoting
 
 State v. Riddick
 
 ,
 
 340 N.C. 338
 
 , 342,
 
 457 S.E.2d 728
 
 , 731 (1995) ).
 

 The evidence, even considered in a light most favorable to Defendant, reveals that Defendant was engaged in wrongdoing when he shot Mr. Sutton. Defendant admitted that he physically assaulted Mr. Sutton and had his hand on the trigger of his gun when it discharged, injuring Mr. Sutton. Because by his own admission he was engaged in wrongful conduct when he shot Mr. Sutton. Defendant was not entitled to a jury instruction on the defense of accident.
 

 *332
 
 Even assuming
 
 arguendo
 
 that Defendant was not precluded from asserting the defense of accident and that the trial court erred in not
 
 sua sponte
 
 instructing the jury on that defense, Defendant cannot establish plain error in light of other evidence presented. Two eyewitnesses-Lawrence Herndon and Mr. Sutton-testified that Defendant held a gun to Mr. Sutton's head. Mr. Sutton testified that he was first shot by Defendant in the back of his knee while running from him. Officer Lonnie Horton, one of the first officers responding to the shooting scene, testified that Mr. Sutton had an entry bullet wound in the back of his knee. We cannot conclude, in light of this evidence, that the jury probably would have reached a different result had it been instructed regarding the defense of accident.
 

 II.
 
 Jury Instruction Regarding Bulletproof Vest
 

 Defendant next contends that the trial court erred in instructing the jury that, if it found Defendant guilty of any of the crimes charged, it was required to determine whether Defendant wore or had in his immediate possession a bulletproof vest at the time he committed such crime. We conclude that the trial court did not err in this instruction.
 

 N.C. Gen. Stat. § 15A-1340.16C(a) provides:
 

 If a person is convicted of a felony and it is found as provided in this section that the person wore or had in his or her immediate possession a bullet-proof vest at the time of the felony, then the person is guilty
 
 *141
 
 of a felony that is one class higher than the underlying felony for which the person was convicted.
 

 N.C. Gen. Stat. § 15A-1340.16C(a) (2015).
 

 The trial court instructed the jury that if it found Defendant guilty of any offense, it must answer "yes" or "no" to the question, "Do you find that he wore, or had in his immediate possession, a bulletproof vest at the time he committed the offense?" The trial court instructed the jury that the burden of proof on this issue was on the State, and that the jury should answer "yes" to the question only if it found the fact beyond a reasonable doubt.
 

 The North Carolina Constitution provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury in open court[.]" N.C. Const. art. I, § 24. The unanimity requirement is not violated "if the trial court merely instructs the jury disjunctively as to various alternative acts
 
 which will establish an element of the offense
 
 [.]"
 

 *333
 

 State v. Bell
 
 ,
 
 359 N.C. 1
 
 , 30,
 
 603 S.E.2d 93
 
 , 113 (2004) (emphasis in original) (quoting
 
 State v. Lyons
 
 ,
 
 330 N.C. 298
 
 , 302-03,
 
 412 S.E.2d 308
 
 , 312 (1991) ).
 

 Defendant contends that the instruction regarding the bulletproof vest was improper because it presented two alternative theories, only one of which was supported by the evidence. "Where the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, ... this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction."
 
 State v. Pakulski
 
 ,
 
 319 N.C. 562
 
 , 574,
 
 356 S.E.2d 319
 
 , 326 (1987).
 

 Defendant does not dispute that both Mr. Sutton and Lawrence Herndon testified that Defendant was wearing a bulletproof vest at the time of the shooting. However, Defendant argues that by relying on this testimony, the State has failed to contend that there was any evidence that could support an instruction that a bulletproof vest was in Defendant's immediate possession-as opposed to being worn by Defendant-at the time of the shooting.
 

 In order to submit to a jury a criminal charge, including the enhancement based upon use of a bulletproof vest during the commission of a felony, the State must present substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980) (citations omitted). To determine if evidence is sufficient, this Court views the evidence in the light most favorable to the State.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994).
 

 Although Mr. Sutton and Lawrence Herndon testified that Defendant wore a bulletproof vest at the time of the shooting, Defendant denied wearing a vest. If jurors had believed Defendant's testimony raised a reasonable doubt regarding whether he had been wearing the vest, they could answer "yes" to the question on the verdict sheet only if they found beyond a reasonable doubt that a bulletproof vest was in Defendant's "immediate possession" at the time of the shooting.
 

 The State introduced evidence sufficient to support a reasonable inference that a bulletproof vest was in Defendant's immediate possession at the time of the shooting. Police officers found a bulletproof vest in the back of the vehicle where Defendant had been sitting when fleeing the scene of the shooting. Forensic testing determined that the blood on the vest belonged to Mr. Sutton, whom Defendant shot.
 

 *334
 
 Therefore, if jurors were not convinced beyond a reasonable doubt that Defendant was wearing the vest during the shooting, they could reasonably infer that the vest was in Defendant's immediate possession at the time he committed the offenses for which he was found guilty. Because the evidence submitted was sufficient to allow jurors to find either of the alternative theories submitted to them regarding Defendant's possession of a bulletproof vest at the time of the shooting-either by wearing it or having it in his immediate possession-Defendant's argument that the charge was improperly submitted to the jury is without merit and is overruled.
 

 *142
 

 Conclusion
 

 The evidence submitted at trial precluded a jury instruction on the defense of accident and supported a jury instruction on the charge that Defendant committed felony assault while wearing or having in his immediate possession a bulletproof vest. Accordingly, Defendant has failed to demonstrate plain error.
 

 NO PLAIN ERROR.
 

 Judges DAVIS and ENOCHS concur.