An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-712

Filed 3 September 2025

Guilford County, Nos. 20 CRS 073401-400, 20 CRS 073808-400, & 21 CRS 028781-400

STATE OF NORTH CAROLINA

v.

EUGENE DALLAS DAVIS, Defendant.

Appeal by Defendant from judgment entered 2 June 2023 by Judge Taylor Browne in Guilford County Superior Court. Heard in the Court of Appeals 9 April 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Wendy J. Lindberg, for the State.*

*Appellate Defender Glenn Gerding, by Attorney Shawn R. Evans, for Defendant–Appellant.*

PER CURIAM

Eugene D. Davis (Defendant) appeals from the trial court's judgment sentencing him to 23–40 months following a jury verdict finding him guilty of felony assault with a deadly weapon inflicting serious injury and misdemeanor breaking and entering (B&E). Defendant claims that the trial court erred by denying his request for a jury instruction on accident. For the reasons below, this Court holds the

Defendant received a fair trial, free of reversible error.

## I. Background

On the evening of 30 April 2020, Defendant and his neighbor Larry Bristow, Jr. went to their mutual neighbor Sherry Henryhand's house to celebrate her birthday. Both had been drinking prior to the party and drank more at Henryhand's house. At the party, Defendant and Bristow got into a fight in which Bristow punched Defendant repeatedly. After others at the party broke up the fight, Bristow walked home.

At trial, testimony diverged as to the events that followed. The State's evidence tended to show that Bristow returned home to his fiancée Kelila McSween and went down the hall into their bedroom while she remained in the front living room. About ten minutes later, McSween saw Defendant approaching the house. Without knocking, Defendant opened the front door and walked in holding a gun. When McSween warned Bristow of the gun, he ran down the hallway, shouting at McSween to run. She ran to the back of the house. When Bristow was six or seven feet from Defendant, Defendant fired the gun and missed. Bristow ran toward Defendant and grabbed his wrist, begging him not to shoot. Defendant fired the gun again twice, hitting Bristow in the torso area, after which Bristow passed out. Then Defendant quickly left Bristow's house.

Defendant's evidence tended to show that he returned to Bristow's house to check on McSween and that he had a gun in his sweatpants pocket from earlier that

day; however, he had forgotten it was there. He testified that the front door was open and McSween welcomed him inside from the hallway. When Defendant told McSween that Bristow had been flirting with Henryhand at the party, Bristow "rushed at" Defendant, "went for [his] pocket," and "both [men] grabbed the gun." In their "tussling," the gun accidentally discharged. Defendant believed Bristow had pulled the trigger because Defendant had not. Defendant testified that he left quickly to get away from Bristow and did not realize Bristow had been shot.

On 8 and 20 September 2020, a grand jury indicted Defendant for felony assault with a deadly weapon with the intent to kill inflicting serious injury, possession of firearm by a felon (PFBF), and felony first-degree burglary. Defendant pleaded guilty to PFBF on 30 May 2023. A jury trial followed on the other two charges. Defendant's counsel raised and requested a jury instruction on the affirmative defense of accident, which the trial court denied. On 2 June 2023, the jury found Defendant guilty of the lesser-included assault with a deadly weapon inflicting serious injury (AWDWISI) and misdemeanor B&E. The trial court then entered judgment based on the jury's verdict and sentenced Defendant to 23–40 months for AWDWISI and 12–24 months for PFBF. Defendant gave timely notice of appeal in open court.

## II.   Jurisdiction

Under N.C.G.S. § 15A-1444, this Court has jurisdiction to address Defendant's appeal from a "final judgment of superior court." N.C.G.S. § 15A-1444(a) (2023).

### III.  Analysis

On appeal, Defendant argues that the trial court prejudicially erred by denying his requested jury instruction on accident because "substantial evidence" from the record showed that Bristow's shooting was accidental. We review *de novo* a challenge to a trial court's jury instructions. *See State v. Osorio*, 196 N.C. App. 458, 466 (2009). To prevail on this challenge, a defendant must demonstrate both "that the requested instruction was not given in substance[ ] and that substantial evidence supported the omitted instruction." *State v. Robinson*, 251 N.C. App. 326, 331 (2016) (quotation omitted). For purposes of whether the trial court should give a jury instruction on accident, we "consider the evidence in the light most favorable to [the] defendant." *Id.* (quotation omitted). A jury instruction on accident is appropriate when the defendant committed the offense in question "unintentional[ly]," "without premeditation, intent, or culpable negligence," and "without wrongful purpose or criminal negligence while engaged in a lawful enterprise." *State v. Riddick*, 340 N.C. 338, 342 (1995) (quotation omitted). For the reasons below, this Court holds that the trial court did not err by denying Defendant's request for a jury instruction on accident.

### A.  Jury Instruction on Accident

We begin by considering the evidence in the light most favorable to Defendant. *See Robinson*, 251 N.C. App. at 331. Defendant's evidence at trial tended to show that he did not have any intent to commit a crime when he returned to Bristow's house. Defendant testified he had forgotten about the gun in his pocket when he returned to

Bristow's house and that McSween welcomed him inside. When Defendant told her that Henryhand "got mad again because [Bristow] was trying to feel on her," Bristow "rushed at" him. Defendant and Bristow then "tussl[ed]" until the gun "was out" of Defendant's sweatpants and were still "tussling" when the gun went off. Defendant believed Bristow had pulled the trigger because he himself had not touched the trigger. Defendant claimed that he was just trying to get away from Bristow and he did not even realize Bristow had been shot by the time he left the house.

It is true, as the State argues, that the only testimony regarding the purportedly accidental nature of the shooting came from Defendant himself. But contrary to the State's claim, Defendant's testimony does not require corroboration to entitle him to have it viewed as true for purposes of receiving a jury instruction on accident. Rather, the State carries the burden of disproving Defendant's evidence tending to show accident.[1] At trial, the State did not argue to deny the jury instruction on accident based on the facts viewed in the light most favorable to Defendant. Instead, the State mainly argued that Defendant was not entitled to a jury instruction on accident because he did not legally possess the gun, and a jury instruction on accident requires that the purportedly accidental action occur during

---

[1] *See* N.C.P.I.—Crim. 307.11. ("When the defendant asserts the alleged victim's injury was the result of an accident[,] . . . [he] . . . den[ies] the existence of those facts which the state must prove beyond a reasonable doubt in order to convict" him. The State then has "[t]he burden . . . to prove those essential facts and in so doing disprove the defendant's assertion of accidental injury.")

otherwise lawful conduct. *See Robinson*, 251 N.C. App. at 331 ("The law is clear that evidence does not raise the defense of accident where the defendant was not engaged in lawful conduct when [a shooting] occurred." (alteration in original; quotation omitted)).

Despite Defendant's unlawful possession of the gun being the State's primary objection at trial to the jury instruction on accident, the State's argument on appeal barely addresses unlawful possession. Rather, the State views the evidence of how the shooting occurred in the light most favorable to the State, contending this case is "remarkably like" the facts presented in both *State v. Robinson* and *State v. Riddick*.

In *State v. Robinson*, this Court held that the defendant was not entitled to a jury instruction on accident because "he was engaged in wrongful conduct" "by his own admission" "when he shot" the victim. *Robinson*, 251 N.C. App. at 331. There, the defendant confronted and "began wrestling and fighting" with the victim, during which the gun in the defendant's waistband came loose and discharged three times, injuring the victim. *Id.* at 329. The defendant "admitted that he physically assaulted [the victim] and had his hand on the trigger of his gun when it discharged, injuring" the victim. *Id.* at 331. But Defendant made no such admission here.

Similarly, in *State v. Riddick*, our Supreme Court held the defendant was not entitled to a jury instruction on accident because he admitted to looking for the victim with a loaded gun and fired the gun intentionally. *Riddick*, 340 N.C. at 343. There, the undisputed evidence showed that the defendant "sought out the victim, . . .

intentionally confronted the victim with a loaded firearm, . . . assaulted the victim, and that the gun was in the defendant's hand when two bullets, one of which entered the victim's body, were fired from it." *Id.* Here, the evidence viewed in the light most favorable to Defendant does not show an intentional assault.

The facts of this case superficially resemble both *Robinson* and *Riddick* but are not "remarkably like" either. Unlike the *Robinson* and *Riddick* defendants, Defendant here did not admit to intentionally firing the gun or even having his hand on the gun when it discharged. Defendant testified he did not recall the gun was in his pocket, did not touch it, and believed Bristow had pulled the trigger during their "tussling."

Although testimony from other witnesses corroborates little of Defendant's account of the shooting, we must consider his evidence as true to determine whether the trial court should have instructed on accident. And based on Defendant's evidence as discussed so far, viewed in the light most favorable to him, the trial court should have instructed on accident. But again, the State's main argument at trial opposing the jury instruction on accident was that Defendant was not engaged in lawful conduct by possessing the firearm. We now analyze the impact of this unlawful conduct on Defendant's request for a jury instruction on accident.

## B. Unlawful Conduct

Defendant argues on appeal that his unlawful possession of the gun should not preclude a jury instruction on accident, relying primarily on *State v. McLymore*, 380

N.C. 185 (2022). In *McLymore,* our Supreme Court held that, to "disqualify a defendant" from a jury instruction on "self-defense [under] N.C.G.S. § 14-51.4(1), the State must prove . . . an immediate causal nexus between the defendant's disqualifying conduct and the confrontation during which the defendant used force." *Id.* at 197; *see* N.C.G.S. § 14-51.4(1) (precluding self-defense for unlawful conduct). Otherwise, the Court reasoned, absurdity would ensue—using the status offense of illegal firearm possession to preclude self-defense would result in "forever barr[ing]" "all individuals with a prior felony conviction . . . from using a firearm in self-defense under any circumstances." *McLymore,* 380 N.C. at 199. Because "the trial court did not instruct the jury on this causal nexus requirement," the Court concluded that "the jury instructions it delivered were erroneous." *Id.* at 200.

Defendant argues that the "causal nexus" rule in *McLymore* should apply to accident or "otherwise[,] similar absurd results may arise." He argues that it would be "unjust" to apply the lawful conduct rule to a status offense and to "a set of controverted facts, as in this case" because the fact that he "was a felon, and therefore not legally permitted to possess a gun, had no bearing on the fact that the accident occurred." In its brief to this Court, the State's *entire* response to Defendant's argument regarding his possession of the firearm was that

> [a]lmost as an afterthought,[2 Defendant] states that he has also

---

[2]    It was not an afterthought. One section of Defendant's brief is entitled "Procedural Facts Regarding Denial of Accident Instruction." This section is almost two pages and it reviews the

considered what the District Attorney has argued regarding Defendant's lawful conduct as it relates to his being a felon in possession of a firearm. The Court found here that Defendant was acting unlawfully by confronting Larry with a firearm, threatening him (whether by shooting at him as he rounded the hallway corner or pistol whipping him) and discharging the gun three separate times.

We note that the State's argument in the brief does *not* address Defendant's unlawful possession of the gun but instead focuses on the evidence of how the shooting occurred viewed in the light most favorable to the State, not Defendant. Beyond that, the State deems Defendant's argument that he should not be precluded from a jury instruction on accident by his unlawful possession of the gun as not worthy of response in its brief on appeal.

No case has applied *McLymore* in the context of a jury instruction on accident, and it is unclear if this Court should address the issue, even in an unpublished *per curiam* where the State has not even argued its strongest position. This Court cannot create an argument for the appellant. *See K2HN Constr. NC, LLC v. Fire D Cont'rs, Inc.*, 267 N.C. App. 207, 215 (2019). But we also should not create an argument on appeal for the State, particularly in a criminal case. *See State v. Romano*, 369 N.C. 678, 693 (2017). The State is the appellee here, but in a criminal case, the State has the obligation to respond to a defendant's arguments on appeal, particularly where the issue was raised and argued by the State before the trial court.

request for the jury instruction on accident, the State's argument at trial objecting to the same, and the trial court's ruling. About three pages of Defendant's brief addresses his substantive argument on this issue.

But in response to Defendant's argument on appeal, this Court concludes that the trial court did not prejudicially err because *both* the State's evidence and Defendant's evidence show "an immediate causal nexus between the defendant's disqualifying conduct and the confrontation during which the defendant used force." *McLymore*, 380 N.C. at 197. Here, Defendant testified that he had a gun in his pocket when he returned to Bristow's house, that he had forgotten about it, and that he knew he could not legally possess a gun. Contrary to Defendant's claim that his unlawful possession of the gun "had no bearing on the fact that the accident occurred," Defendant's violation of the law by bringing the gun to Bristow's home directly resulted in the gun "accidentally" shooting Bristow during their physical fight. Thus, there was an "immediate causal nexus" between Defendant's unlawful conduct of carrying a gun he was not allowed to legally possess and the shooting which injured Bristow. *Id.* Accordingly, the trial court did not err by denying the jury instruction on accident.

## IV. Conclusion

For the reasons discussed above, this Court holds that the trial court did not prejudicially err in denying Defendant's request for a jury instruction on accident.

NO ERROR.

Panel consisting of Judges STROUD, STADING, and MURRY.

Report per Rule 30(e).